**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ONCORE MOTOR GROUP LLC, and | ) | Case No. 26-BK-04298 |
| REULAND ELECTRIC CO., | ) | Case No. 26-BK-04300 |
| | ) | |
| Debtors.[1] | ) | Hon. Nancy B. King |
| | ) | Chapter 11 |
| | ) | (Joint Administration Requested) |

**EXPEDITED MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF CASH COLLATERAL, GRANTING ADEQUATE PROTECTION, AND SETTING A FINAL HEARING**

Reuland Electric Co. (the "Debtor" or "Reuland") respectfully submits this Expedited Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral, Granting Adequate Protection, and Setting a Final Hearing (the "Motion") pursuant to sections 105(a), 361, 362, 363, and 552 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking authority for the interim and final use of cash collateral in accordance with the budget attached hereto as Exhibit A (the "Budget"). In support of this Motion, the Debtor relies upon, and incorporates by reference, the Declaration of Grant R. Bibby in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration") filed contemporaneously herewith, and further states as follows:

**CONSPICUOUS DISCLOSURE PURSUANT TO LOCAL RULE 2081-1(f)**

Pursuant to Local Bankruptcy Rule 2081-1(f), the Debtor conspicuously states that of the categories of relief enumerated in that rule, this Motion and the proposed interim order seek only the following:

[1] The Debtors in these Chapter 11 cases, along with the last four digits of Debtors' federal tax identification numbers are: OnCore Motor Group LLC (3510) and Reuland Electric Co. (2980). The corporate headquarters and mailing address for OnCore Motor Group LLC is 6323 Pettus Road, Antioch, TN 37013-4722. The corporate headquarters for Reuland Electric Co. is 1615 Yeager Ave, La Verne, CA 91750 and the mailing address is 225 North Unruh, City of Industry, CA 91744.

*(a) Local Rule 2081-1(f)(3): findings, conclusions, or holdings as to the amount of a debt or the validity, priority, or extent of a lien or security interest that purport to affect the rights of any entity other than the debtor in possession and the creditor. For the limited purpose of obtaining the interim relief requested, and solely for that purpose, the Debtor does not dispute the validity, priority, or extent of the liens asserted by the parties identified below, and proposes to maintain the status quo. The Debtor expressly reserves the right to challenge the validity, priority, extent, perfection, enforceability, and amount of any such lien or claim at or before the final hearing on this Motion, and the interim order will provide that no such determination is made. This disclosure appears in this paragraph and in the corresponding paragraph on the first page of the proposed interim order.*

The Debtor further states, for the avoidance of doubt, that this Motion and the proposed interim order do NOT seek any of the following:

(a) a lien or security interest in postpetition assets in which a prepetition creditor does not have a security interest by virtue of its prepetition security agreement, other than replacement liens in the same kind of collateral the creditor had prepetition (Local Rule 2081-1(f)(1));

(b) resolution of any dispute concerning the validity, priority, or extent of a prepetition lien or security interest or the amount of a prepetition claim (Local Rule 2081-1(f)(2));

(c) any release, waiver, or abandonment of claims, setoff rights, surcharge rights, avoidance actions, or subordination actions against any creditor, or any finding or stipulation that no such rights exist (Local Rule 2081-1(f)(4));

(d) the granting of liens or security interests against rights or actions arising under sections 544, 545, 547, 548, or 549 of the Bankruptcy Code, or the proceeds thereof (Local Rule 2081-1(f)(5));

(e) the use of funds derived from postpetition financing to pay all or part of a prepetition secured debt, or any provision deeming prepetition secured debt to be postpetition secured debt (Local Rule 2081-1(f)(6));

(f) any surcharge or carve-out rights for professionals, or any restriction on the surcharge or carve-out rights granted to professionals, including any restriction on investigation or pursuit of causes of action against a lender or secured creditor (Local Rule 2081-1(f)(7));

(g) payment of prepetition wages, salary, or other compensation to any employee in excess of the priority amount under the Bankruptcy Code, payment of any severance or vacation pay earned prepetition, or payment of any prepetition wages, salaries, commissions, benefits, or consulting fees to an insider or equity holder (Local Rule 2081-1(f)(8)), provided that authority to pay accrued vacation, subject to the priority cap, is sought by the contemporaneously filed wage motion; and

(h) the priming of any secured creditor under section 364(d) of the Bankruptcy Code (Local Rule 2081-1(f)(9)).

## SUMMARY OF EXPEDITED RELIEF REQUESTED

1. **Expedited Relief Requested.** The Debtor requests that the Court enter an interim order on an expedited basis authorizing the Debtor to use cash collateral in accordance with the Budget, granting replacement liens as adequate protection to the same extent, validity, and priority as existed on the Petition Date, directing account debtors holding funds owed to the Debtor to remit those funds to the Debtor, and setting a final hearing.

2. **Basis for Urgency.** The Debtor operates four manufacturing facilities and employs approximately 194 people. Substantially all of the Debtor's operating liquidity consists of cash collateral. Without immediate authority to use it, the Debtor cannot fund payroll, purchase raw material, maintain insurance, or keep the plants running, and it cannot ship against a backlog of

approximately $14.3 million in firm customer orders. The Debtor's opening cash position is approximately $298,600 and the Budget projects an ending cash balance of approximately $546,000 in the third week of the forecast period. Absent the relief requested, the Debtor would suffer immediate and irreparable harm and the going-concern value of the estate would be lost within days.

3. **Notice.** This Motion has been served on (i) all parties consenting to electronic service via the Court's CM/ECF system; (ii) the Office of the United States Trustee; and, via first class mail and via email as available, on (iii) all secured creditors of each Debtor and each party asserting an interest in cash collateral; and (iv) the 20 largest unsecured creditors of each Debtor. Debtors' proposed counsel informed the Office of the United States Trustee prior to the filing of the Chapter 11 Cases that first day motions would be filed.

4. **Suggested Hearing Date.** The Debtor respectfully requests a hearing date of September 8, 2026, but no later than September 9, 2026.

5. **Supporting Argument.** The Debtor supports this Motion as set forth below.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory and legal predicates for the relief sought herein are sections 105(a), 361, 362, 363, and 552 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

## BACKGROUND

8. On September 3, 2026 (the "Petition Date"), the Debtor, along with OnCore Motor Group LLC (collectively, the "Debtors"), filed with the Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

9. The Debtors are authorized to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

10. Contemporaneously with the filing of the petitions, the Debtors have filed a notice of election designating these Chapter 11 Cases as complex cases under Local Bankruptcy Rule 2081-2(b).

11. Reuland is an 89-year-old manufacturer of custom electric motors. It operates an aluminum casting foundry in City of Industry, California, a CNC machining operation in Brea, California, a motor winding, assembly, and testing facility in La Verne, California, and a manufacturing and testing facility for larger motors in Howell, Michigan. It serves more than 1,000 repeat customers, including the United States Navy, aerospace and defense manufacturers, and operators of moving bridges, dams, and flood control systems. At any given time it has between 500 and 700 unique custom motor orders in production.

12. Additional factual background regarding the Debtors, including their business operations, capital structure, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration, which is incorporated herein by reference.

## THE DEBTOR'S PREPETITION SECURED DEBT

13. The Debtor has conducted a search of the records of the California Secretary of State and has reviewed the loan documents in its possession. Based on that review, the Debtor

identifies the following parties as holding or potentially holding liens on property of the estate, including property that may constitute cash collateral within the meaning of section 363(a) of the Bankruptcy Code.

**A. Austin Financial Services, Inc.**

14. Austin Financial Services, Inc. ("AFS") provides the Debtor's working capital facility. The lending relationship began on or about January 12, 2010 under a Loan and Security Agreement, which was amended and restated on August 12, 2022 and has since been modified fifteen times, most recently by Modification Number Fifteen dated March 16, 2026 (as amended, the "AFS Loan Agreement"). The facility consists of a revolving line of credit with a total commitment of $7,500,000, inclusive of a $4,700,000 sublimit for advances against inventory, and a term loan in the original principal amount of $4,000,000.

15. AFS perfected its asserted security interest by a UCC-1 financing statement filed with the California Secretary of State on October 15, 2009, File No. 097211322259, continued on September 4, 2014, August 12, 2019, and May 15, 2024, and effective through October 15, 2029. The financing statement describes, among other things, all goods, equipment[2], machinery, tools, and motor vehicles; all inventory, including raw materials, parts, supplies, work in process, and finished products; all accounts and other rights to payment; all documents, instruments, and chattel paper; all general intangibles; all cash and deposit accounts; and all proceeds and products of the foregoing, including insurance proceeds.

16. In a complaint filed on or about August 25, 2026 in the Superior Court of California for the County of Los Angeles, Case No. 26STCV26896, AFS asserts that the aggregate

[2] It is believed that the intercreditor agreement grants Byline a first-priority lien on equipment. Furthermore, individual equipment lenders are believed to hold first-priority purchase money security interests in specific financed equipment.

outstanding balance of its obligations, including both the revolving line of credit and the term loan was not less than $10,650,587.68 as of August 25, 2026, plus accruing interest, fees, and expenses.

17. In March 2026, in connection with Modification Number Fifteen, the Debtor granted AFS a mortgage on its Michigan real property. Modification Number Fifteen required the Debtor to consummate a sale of that property on or before August 31, 2026 and to remit $750,000 to AFS from the proceeds. The Debtor performed that obligation, completing a sale-leaseback of the Michigan facility in June 2026 and paying AFS $750,000. The Debtor continues to occupy the Michigan facility as lessee.

18. The Debtor does not dispute the validity, priority, or extent of the AFS liens for the limited purpose of the interim relief requested, and expressly reserves all rights, claims, defenses, and counterclaims, including with respect to the amount of the AFS claim.

**B. Byline Bank**

19. Byline Bank ("Byline") holds a loan in the original principal amount of $5,000,000, made in July 2023 under the U.S. Small Business Administration's 7(a) program, the proceeds of which helped finance the acquisition of Reuland. The outstanding balance of the Byline debt as of the Petition Date is approximately $3,966,600.95. OnCore Motor Group LLC is a co-borrower or obligor on the Byline loan, and the loan is further supported by a stock pledge and a guaranty.

20. Byline perfected its asserted security interest by a UCC-1 financing statement filed against Reuland with the California Secretary of State on July 28, 2023, File No. U230053590418, effective through July 28, 2028, and by a UCC-1 financing statement filed against OnCore Motor Group LLC with the Tennessee Secretary of State on August 9, 2023, Document No. 438915801, effective through August 9, 2028. The Byline financing statements describe, among other things, all goods, inventory, equipment, accounts, chattel paper, instruments, deposit accounts, investment

property, money, contract rights, general intangibles, fixtures, and all products and proceeds of the foregoing.

21. The Byline lien is therefore a blanket lien reaching the same categories of collateral as the AFS lien, but it was perfected approximately fourteen years after the AFS financing statement. The Debtor understands that an intercreditor or subordination agreement between AFS and Byline exists but has not located an executed copy. The Debtor is current with Byline and has never missed a payment.

**C. Equipment Lenders and Lessors**

22. The Debtor finances a substantial portion of its manufacturing equipment through approximately twenty equipment lenders. As of July 2026, the aggregate outstanding balance under those arrangements was approximately $4,002,063. The Debtor is current with every one of these parties and has not missed a payment to any of them.

23. The Debtor's search of the California Secretary of State records reflects active financing statements filed by the following parties (collectively, the "Equipment Lenders"):

(a) Complete Capital Services, Inc. (St. Clair Shores, Michigan);

(b) Leaf Capital Funding, LLC (Philadelphia, Pennsylvania);

(c) Summit Funding Group, Inc. (Mason, Ohio);

(d) Mitsubishi HC Capital America, Inc. (Itasca, Illinois);

(e) Navitas Credit Corp (Columbia, South Carolina);

(f) Highland Capital Corp. (Township of Washington, New Jersey);

(g) Manufacturers Financing Services (Santa Fe Springs, California);

(h) Horizon Bank (Michigan City, Indiana);

(i) Verdant Commercial Capital, LLC (Cincinnati, Ohio);

(j) De Lage Landen Financial Services, Inc. (Wayne, Pennsylvania);

(k) GreatAmerica Financial Services Corporation (Cedar Rapids, Iowa);

(l) Ellison Financing Services (Santa Fe Springs, California);

(m) HomeTrust Bank (Cornelius, North Carolina);

(n) Raymond Leasing Corporation (Greene, New York);

(o) C T Corporation System, as representative (Glendale, California); and

(p) Corporation Service Company, as representative (Springfield, Illinois).

24. The Debtor believes that the Equipment Lenders generally hold liens limited to specific items of equipment financed or leased by them, together with proceeds of that equipment, and that they do not generally hold liens on the Debtor's accounts, inventory, or deposit accounts. The Debtor has not, however, completed a review of each individual financing statement, and the filings made by C T Corporation System and Corporation Service Company as representatives do not disclose the underlying secured party on their face. Given the volume of filings and the timing of these Chapter 11 Cases, the Debtor has not undertaken to characterize each arrangement individually.

25. Accordingly, and out of an abundance of caution, the Debtor proposes to treat the Equipment Lenders in the same manner as AFS and Byline for purposes of the interim relief requested. To the extent any Equipment Lender holds a valid, perfected, and unavoidable prepetition lien on property that constitutes cash collateral, that party will receive a replacement lien to the same extent, validity, and priority as its prepetition lien. Nothing in this Motion or the proposed interim order constitutes an admission that any Equipment Lender holds an interest in cash collateral, or a determination of the validity, priority, or extent of any such lien.

26. The Debtor does not propose to make adequate protection payments to any secured party during the interim period. The Debtor is prepared to discuss adequate protection payments,

superpriority claims, reporting, and other protections with any secured party in advance of the final hearing.

**D. Property Constituting Cash Collateral**

27. The Debtor's cash collateral consists principally of (a) cash on hand and funds on deposit in the Debtor's bank accounts, including the collection account maintained at Hilltop Bank; (b) proceeds of prepetition accounts receivable; and (c) proceeds of prepetition inventory. As of the Petition Date, the Debtor held cash of approximately $298,600.00 and accounts receivable of approximately $4.82 million, $2.48 million of which is 0-30 days.

28. The Debtor also receives cash-in-advance deposits and progress payments from customers, depending on the size of the order. These amounts are not refundable if the customer cancels. They are received as consideration for the Debtor's performance and are used, as they are received, to purchase raw material and fund the labor required to build the customer's order. The Debtor's books reflect a cash-in-advance balance of approximately $3,187,644 across approximately 85 customer orders as of the Petition Date, representing amounts received and applied against orders in production. That balance is a deferred revenue account reflecting performance not yet recognized. It does not represent funds held by the Debtor, and no customer holds a right to a refund of any portion of it. For purposes of the interim relief requested, and solely for that purpose, the Debtor proposes to treat cash-in-advance receipts as cash collateral. The Debtor expressly reserves the right to assert at or before the final hearing that deposits received after the Petition Date are not subject to any prepetition lien pursuant to section 552(a) of the Bankruptcy Code, and no party's rights with respect to that issue are determined by the interim order.

29. The Debtor further discloses that, in connection with a proposed sale of its brake product line that has not closed, it received $100,000 on September 1, 2026 and $50,000 on

September 2, 2026, and expects to receive a further $100,000 on or about September 3, 2026. Those funds were, or upon receipt will be, deposited into the Debtor's operating account at Hilltop Bank. The amounts received before the Petition Date are included in the Debtor's opening cash position. The Debtor treats those prepetition amounts as cash collateral for purposes of the interim relief requested and reserves all rights with respect to the characterization of those funds and of any amount received on or after the Petition Date.

## THE BUDGET AND THE NEED FOR CASH COLLATERAL

30. Attached as Exhibit A is a week-by-week forecast of the Debtor's projected cash receipts and disbursements for the period beginning on the Petition Date (the "Budget"). The Budget was prepared by the Debtor's management in the ordinary course and reflects the Debtor's good faith projection of the cash required to operate the business.

31. The Budget provides for the payment of net payroll for approximately 194 employees, purchases of raw material including coil steel, aluminum ingot, and copper wire, facility rent at five locations, insurance including workers' compensation, utilities at all facilities, freight, and ordinary course administrative expenses. It does not provide for the payment of prepetition trade debt except as separately authorized by this Court.

32. The Debtor requests authority to use cash collateral in accordance with the Budget, with permitted variance of up to ten percent for any individual line item and up to ten percent in the aggregate, measured on a cumulative basis, and to carry forward any unused amounts to subsequent periods.

33. The need for the relief is immediate and it is absolute. The Debtor's business is the assembly of custom-engineered motors. If the Debtor cannot buy copper wire and steel, it cannot build motors. If it cannot pay its workforce, the skilled machinists, winders, and foundry operators who have in many cases spent decades at the company will leave and cannot be replaced. If it

cannot ship, it loses customers who have purchased from Reuland for more than thirty years and who in many cases have no alternative supplier. Each of those consequences destroys collateral value rather than preserving it.

## RELIEF REQUESTED

34. By this Motion, the Debtor requests entry of interim and final orders:

(a) authorizing the Debtor to use cash collateral in accordance with the Budget, subject to the permitted variances described above;

(b) granting adequate protection to each party holding a valid, perfected, and unavoidable prepetition lien on cash collateral, in the form of replacement liens as described below;

(c) authorizing and directing all account debtors and other parties holding funds owed to the Debtor to remit those funds to the Debtor in the ordinary course, notwithstanding any prepetition notice, demand, or instruction to the contrary;

(d) scheduling a final hearing on this Motion and approving the form and manner of notice thereof; and

(e) granting related relief.

### A. Adequate Protection

35. As adequate protection for the Debtor's use of cash collateral and for any diminution in the value of their interests in the prepetition collateral, the Debtor proposes to grant to each party holding a valid, perfected, and unavoidable prepetition lien on cash collateral a replacement security interest under sections 361(2) and 552(b) of the Bankruptcy Code in the Debtor's postpetition property of the same kind and character as the prepetition collateral, and in the proceeds thereof, to the same extent, validity, and priority as existed immediately prior to the

Petition Date, and only to the extent of the diminution in value of such party's interest resulting from the Debtor's use of cash collateral.

36. The replacement liens will not extend to, and will exclude, the Debtor's claims and causes of action under sections 544, 545, 546, 547, 548, 549, and 550 of the Bankruptcy Code and the proceeds thereof.

37. The replacement liens will be deemed perfected upon entry of the interim order, without the necessity of taking possession of any collateral, filing any financing statement, or executing or recording any other document.

38. The Debtor submits that this is the correct form of adequate protection at the interim stage. The proposal preserves the existing lien structure exactly as it stood on the Petition Date. No party receives a lien on any category of collateral it did not already hold. The Debtor proposes to negotiate with any party seeking additional protection, including superpriority claims under section 507(b), periodic cash payments, reporting covenants, and budget compliance covenants, and to present any agreed terms to the Court at the final hearing.

**B. Direction to Account Debtors**

39. Prior to the Petition Date, AFS issued notices to the Debtor's account debtors under section 9406 of the California Commercial Code directing them to remit payment to AFS rather than to the Debtor. As a result, a number of the Debtor's customers have withheld payment altogether out of a reasonable concern about paying the wrong party.

40. The Debtor's accounts receivable and the proceeds thereof are property of the estate. Any postpetition act to obtain possession of, or to exercise control over, that property is stayed by section 362(a)(3) of the Bankruptcy Code, and any entity holding property of the estate is obligated to deliver it to the Debtor under section 542 of the Bankruptcy Code. The Debtor accordingly requests an order authorizing and directing all account debtors and other parties

holding funds owed to the Debtor to remit those funds to the Debtor in the ordinary course, notwithstanding any prepetition notice, demand, or instruction to the contrary.

41. Clear direction from this Court is needed so customers may safely pay the Debtor, which is essential to the Debtor's reorganization.

## **BASIS FOR RELIEF**

42. Section 363(c)(2) of the Bankruptcy Code permits a debtor in possession to use cash collateral if each entity that has an interest in such cash collateral consents, or if the court, after notice and a hearing, authorizes such use. 11 U.S.C. § 363(c)(2). Section 363(e) provides that on request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. 11 U.S.C. § 363(e).

43. Section 361 of the Bankruptcy Code specifies that adequate protection may be provided by periodic cash payments, by an additional or replacement lien, or by such other relief as will result in the realization of the indubitable equivalent of the entity's interest in the property. 11 U.S.C. § 361. What adequate protection requires is protection against a decrease in the value of the secured creditor's interest in the collateral resulting from the debtor's use of it. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988).

44. The determination of adequate protection is committed to the sound discretion of the bankruptcy court and is made flexibly, on the facts of the particular case. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396-97 (10th Cir. 1987). Courts have repeatedly recognized that the use of cash collateral to continue operating a viable business may itself protect, and even enhance, the value of a secured creditor's collateral. *See In re Dynaco Corp.*, 162 B.R. 389, 395-96 (Bankr. D.N.H. 1993); I*n re Continental Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993).

45. That is precisely the situation here. The Debtor's accounts receivable and inventory have value because the Debtor is a going concern that converts raw material into custom motors and ships them to customers who need them. Work in process consisting of partially machined castings and half-wound stators has substantial value as a stream of deliveries and very little value as in a liquidation or as scrap. Denying the use of cash collateral would not preserve the collateral. It would destroy the very thing that gives it value.

46. The proposed replacement liens satisfy section 361(2). Each secured party will receive a lien on postpetition property of the same kind and character as its prepetition collateral, in the same order of priority, to the extent of any diminution in value. The Debtor is not asking any secured party to accept less protection than it had on the Petition Date, and is not asking this Court to give any secured party more.

47. Finally, section 105(a) of the Bankruptcy Code authorizes the Court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code, including the direction to account debtors described above, which is necessary to give practical effect to sections 362(a)(3) and 542(b) under the particular circumstances of these cases.

## RESERVATION OF RIGHTS

48. Nothing in this Motion or in any order entered on it shall constitute (a) an admission as to the validity, priority, extent, perfection, enforceability, or amount of any claim or lien asserted against the Debtor or its property; (b) a waiver of any right, claim, defense, counterclaim, or cause of action of the Debtor or its estate, including under sections 502, 506, 510, 542 through 553, and 558 of the Bankruptcy Code; (c) a determination that any party holds an interest in cash collateral; or (d) an assumption or rejection of any executory contract or unexpired lease. The Debtor expressly reserves the right to assert, at or before the final hearing, that cash-in-advance deposits

received after the Petition Date are not subject to any prepetition lien pursuant to section 552(a) of the Bankruptcy Code.

49. The Debtor further requests that the interim order provide a period, expiring no earlier than the later of seventy-five days after entry of the interim order or sixty days after the appointment of any official committee of unsecured creditors, within which the Debtor, any committee, or any other party in interest with standing may investigate and challenge the validity, priority, extent, perfection, enforceability, or amount of any prepetition lien or claim.

## NOTICE

50. Notice has been given as indicated in paragraph 3, above. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, the Debtor respectfully requests entry of an interim order substantially in the form attached hereto as Exhibit B: (i) granting this Motion; (ii) authorizing the Debtor to use cash collateral in accordance with the Budget; (iii) granting the adequate protection described herein; (iv) authorizing and directing all account debtors and other parties holding funds owed to the Debtor to remit those funds to the Debtor notwithstanding any prepetition notice, demand, or instruction to the contrary; (v) scheduling a final hearing on this Motion; and (vi) granting such other and further relief to which the Debtor may be entitled.

[*remainder of this page intentionally left blank*]

Dated: September 3, 2026.

Respectfully submitted,

*<u>/s/ Robert J. Gonzales</u>*
Robert J. Gonzales (TN BPR# 016705)
Hannah L. Berny (TN BPR# 039269)
**EMERGELAW, PLC**
4235 Hillsboro Pike, Suite 300
Nashville, Tennessee 37215
(615) 815-1535
robert@emerge.law
hannah@emerge.law

*Proposed Counsel for Debtors and Debtors in Possession*

**EXHIBIT A**

**BUDGET**

| REULAND CASH FORECAST | Week Ending 9/11/26 | Week Ending 9/18/26 | Week Ending 9/25/26 | Week Ending 10/2/26 | Week Ending 10/9/26 | Week Ending 10/16/26 | Week Ending 10/23/26 | Week Ending 10/30/26 | Week Ending 11/6/26 | Week Ending 11/13/26 | Week Ending 11/20/26 | Week Ending 11/27/26 | Week Ending 12/4/26 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Weekly Shipments** | 750 | 750 | 750 | 800 | 750 | 800 | 750 | 750 | 800 | 750 | 700 | 700 | 800 |
| **Opening Cash** | 299 | 252 | 217 | 546 | 404 | 698 | 611 | 925 | 898 | 1,123 | 1,001 | 1,390 | 1,607 |
| **Cash In** | | | | | | | | | | | | | |
| Expected Weekly Sales Collections - impacted by notice to customers | 300 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 533 | 500 | 533 | 500 | 500 |
| Expected Weekly CIA Receipts - impacted by notice to customers | 150 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 267 | 250 | 267 | 250 | 250 |
| Additional Investment or Financing (TBD) | - | - | | - | - | | | | | | - | - | |
| **Total Cash In** | 450 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 800 | 750 | 800 | 750 | 750 |
| **Cash Out - Payroll** | | | | | | | | | | | | | |
| Hourly Net Payroll (weekly) | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 | 132 |
| Salaried Net Payroll (bi-monthly 15th and 30th) | - | 147 | - | 140 | | 140 | | 140 | | 140 | - | - | 140 |
| Payroll Taxes and Withholdings | 53 | 135 | 53 | 133 | 53 | 133 | 53 | 133 | 53 | 133 | 53 | 53 | 133 |
| **Total Payroll Cash Out** | 185 | 414 | 185 | 405 | 185 | 405 | 185 | 405 | 185 | 405 | 185 | 185 | 405 |
| **Cash Out - Vendors - Production materials, components, supplies, freight** | 272 | 166 | 111 | 104 | 141 | 193 | 111 | 104 | 141 | 193 | 111 | 104 | 141 |
| **Cash Out - Facility Rent - pay monthly** | | | | | | | | | | | | | |
| Brea Lease - Machining Facility | - | | | 40 | - | | | | 40 | | | | 40 |
| Unruh Lease - Casting Facility | - | - | | 36 | - | | | | 36 | | | | 36 |
| La Verne Lease - Winding and Assembly Facility | - | - | - | 58 | - | - | - | | 58 | | - | | 58 |
| Storage Rent - Storage Yard | - | | | 5 | - | | | | 5 | - | | | 5 |
| Howell Michigan Lease - Motor Manufacturing | | | | 45 | | | | | 45 | | | | 45 |
| Rent Arrearage to be Cured | | | | 28 | | 28 | | 28 | | 28 | | 28 | |
| **Cash Out - Facility Leases** | - | - | - | 212 | - | 28 | - | 28 | 184 | 28 | - | 28 | 184 |
| **Cash Out - Insurances - pay monthly** | | | | | | | | | | | | | |
| Health Insurance | | 51 | 90 | - | | 51 | 90 | | - | 51 | 90 | | - |
| True North - General and Liability Insurance | | 29 | | 40 | - | - | - | | 40 | - | | - | 40 |
| Sentry - Worker's Comp. | - | - | - | 106 | | - | - | 106 | | | | 106 | |
| **Cash Out - Insurances** | - | 80 | 90 | 146 | - | 51 | 90 | 106 | 40 | 51 | 90 | 106 | 40 |
| **Cash Out - SGA - pay monthly** | | | | | | | | | | | | | |
| Utilities - Electric, Gas, Waste Management | - | 55 | | - | 55 | - | | | | 55 | - | | |
| Global Solutions - New ERP System | 15 | | | | 15 | | | - | | 15 | | - | |
| Commissions - Outside Sales Reps | - | 35 | - | - | 35 | - | | 75 | | | | 75 | |
| Consultants | | - | 10 | | | - | | 10 | | - | | 10 | |
| Ordinary Course Legal and Professional Fees | - | 10 | - | - | | 10 | - | - | | 10 | - | | |
| Taxes | | | | | | | | | | | | | |
| All Other | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 |
| **Cash Out - SGA** | 40 | 125 | 35 | 25 | 130 | 35 | 25 | 110 | 25 | 105 | 25 | 110 | 25 |
| **Cash Out - Lenders** | | | | | | | | | | | | | |
| Adequate Protection - Byline SBA Equipment Loan | - | | | - | - | | | | - | | | | - |
| Adequate Protection - AFS | | | | | | | | | | | | | |
| Adequate Protection - Equipment Lenders | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Adequate Protection - Other | | | | | | | | | | | | | |
| **Cash Out - Lenders** | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Chapter 11 Administrative and Professional Costs** | | | | | | | | | | | | | |
| US Trustee Quarterly Fees | - | | | | | | | 24 | | | | | |
| Debtor's Counsel | | | - | | | 125 | - | | | 90 | - | | |
| Financial Advisor | | | | | | | | | | | | | |
| Committee Counsel | | | | | | | 25 | | | | | | |
| Utility Deposit | | | | | | | | | | | | | |
| Other Chapter 11 Related Expenses | | | | | | | | | | | | | |
| **Cash Out - Chapter 11 Administrative and Professional Costs** | - | - | - | - | - | 125 | 25 | 24 | - | 90 | - | - | - |
| **Grand Total Cash Out** | 497 | 785 | 421 | 892 | 456 | 837 | 436 | 777 | 575 | 872 | 411 | 533 | 795 |
| **Net Cash Change - Cash In minus Cash Out** | (47) | (35) | 329 | (142) | 294 | (87) | 314 | (27) | 225 | (122) | 389 | 217 | (45) |
| **Ending Cash** | 252 | 217 | 546 | 404 | 698 | 611 | 925 | 898 | 1,123 | 1,001 | 1,390 | 1,607 | 1,562 |

**EXHIBIT B**

***Proposed Interim Order***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ONCORE MOTOR GROUP LLC, and | ) | Case No. 26-BK-04298 |
| REULAND ELECTRIC CO., | ) | Case No. 26-BK-04300 |
| | ) | |
| Debtors.[1] | ) | Hon. Nancy B. King |
| | ) | Chapter 11 |
| | ) | (Joint Administration Requested) |

**INTERIM ORDER AUTHORIZING THE USE OF CASH COLLATERAL, GRANTING ADEQUATE PROTECTION, AND SETTING A FINAL HEARING**

*This Interim Order includes relief described in Local Bankruptcy Rule 2081-1(f)(3), set forth at paragraph 3 below: findings, conclusions, or holdings as to the amount of a debt or the validity, priority, or extent of a lien or security interest that purport to affect the rights of any entity other than the debtor in possession and the creditor. For the limited purpose of the interim relief granted herein, the Debtor does not dispute the validity, priority, or extent of the liens asserted by the parties identified in the Motion, and the status quo is maintained. This Interim Order makes no determination as to the validity, priority, extent, perfection, enforceability, or amount of any such lien or claim, and all rights are reserved as set forth in paragraph 9 below. This Interim Order does NOT include any of the relief described in Local Bankruptcy Rule 2081-1(f)(1), (2), (4), (5), (6), (7), or (9).*

Upon the expedited motion (the "Motion") of Reuland Electric Co. (the "Debtor") for entry of interim and final orders authorizing the use of cash collateral, granting adequate protection, and

[1] The Debtors in these Chapter 11 cases, along with the last four digits of Debtors' federal tax identification numbers are: OnCore Motor Group LLC (3510) and Reuland Electric Co. (2980). The corporate headquarters and mailing address for OnCore Motor Group LLC is 6323 Pettus Road, Antioch, TN 37013-4722. The corporate headquarters for Reuland Electric Co. is 1615 Yeager Ave, La Verne, CA 91750 and the mailing address is 225 North Unruh, City of Industry, CA 91744.

setting a final hearing; the Court having jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334; this being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, the Court FINDS as follows:

1. The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on September 3, 2026 (the "Petition Date") and is operating its business and managing its property as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtor requires the immediate use of cash collateral to continue business operations without interruption and to avoid immediate and irreparable harm to the estate pending a final hearing. In the absence of the use of cash collateral, the continued operation of the Debtor's business would not be possible and serious and irreparable harm to the Debtor and its estate would occur.

3. For the limited purpose of the interim relief granted herein, the Debtor does not dispute the validity, priority, or extent of the liens asserted by Austin Financial Services, Inc., Byline Bank, and the Equipment Lenders identified in the Motion. This Interim Order makes no determination as to the validity, priority, extent, perfection, enforceability, or amount of any lien or claim, and no such determination shall be binding on the Debtor, any official committee, the United States Trustee, or any other party in interest.

**IT IS HEREBY ORDERED as follows:**

4. The Motion is GRANTED on an interim basis as set forth herein.

5. Use of Cash Collateral. The Debtor is authorized to use cash collateral through the conclusion of the Final Hearing in accordance with the Budget attached to the Motion as Exhibit

A, with permitted variance of up to ten percent for any individual line item and up to ten percent in the aggregate, measured on a cumulative basis, and with authority to carry forward unused amounts to subsequent periods.

6. Adequate Protection. As adequate protection for the Debtor's use of cash collateral and any diminution in the value of their interests in the prepetition collateral, each party holding a valid, perfected, and unavoidable prepetition lien on cash collateral is granted a replacement security interest under sections 361(2) and 552(b) of the Bankruptcy Code in the Debtor's postpetition property of the same kind and character as its prepetition collateral, and in the proceeds thereof, to the same extent, validity, and priority as existed immediately prior to the Petition Date, and only to the extent of any diminution in value resulting from the Debtor's use of cash collateral. The replacement liens shall not extend to, and expressly exclude, the Debtor's claims and causes of action under sections 544, 545, 546, 547, 548, 549, and 550 of the Bankruptcy Code and the proceeds thereof.

7. Automatic Perfection. The replacement liens granted herein are deemed valid, binding, enforceable, and perfected upon entry of this Interim Order, without the necessity of taking possession of any collateral, filing any financing statement or mortgage, or executing or recording any other document.

8. No Adequate Protection Payments. The Debtor is not authorized or directed to make adequate protection payments to any secured party during the interim period. This Interim Order is without prejudice to the right of any party to seek additional or different adequate protection at the Final Hearing.

9. Direction to Account Debtors. All account debtors and other parties holding funds owed to the Debtor are authorized and directed to remit those funds to the Debtor in the ordinary

course, notwithstanding any prepetition notice, demand, instruction, or communication from any party asserting a lien, claim, or other right to such funds, and without the necessity of further order of this Court. Any postpetition act by any entity to obtain possession of, or exercise control over, the Debtor's accounts or their proceeds may constitute a violation of the automatic stay under section 362 of the Bankruptcy Code.

10. Reservation of Rights and Challenge Period. Nothing in this Interim Order constitutes (a) an admission as to the validity, priority, extent, perfection, enforceability, or amount of any claim or lien; (b) a waiver of any right, claim, defense, counterclaim, or cause of action of the Debtor or its estate, including under sections 502, 506, 510, 542 through 553, and 558 of the Bankruptcy Code; (c) a determination that any party holds an interest in cash collateral; or (d) an assumption or rejection of any executory contract or unexpired lease. The Debtor expressly reserves the right to assert that cash-in-advance deposits received after the Petition Date are not subject to any prepetition lien pursuant to section 552(a) of the Bankruptcy Code. The Debtor, any official committee, and any other party in interest with standing shall have until the later of seventy-five days after entry of this Interim Order or sixty days after the appointment of any official committee of unsecured creditors to investigate and challenge the validity, priority, extent, perfection, enforceability, or amount of any prepetition lien or claim.

11. Final Hearing. The final hearing on the Motion (the "Final Hearing") is set for __________________, 2026 at _________ __.m., in Courtroom ___, Customs House, 701 Broadway, Nashville, Tennessee 37203. Any objection to entry of a final order shall be filed and served no later than ________________, 2026.

12. Notice of Final Hearing. Within three business days after entry of this Interim Order, the Debtor shall serve a copy of this Interim Order and notice of the Final Hearing on (a)

the Office of the United States Trustee, (b) all parties asserting a lien on property of the Debtor, (c) the holders of the twenty largest unsecured claims against each Debtor, and (d) all parties requesting notice under Bankruptcy Rule 2002.

13. Modification. At the Final Hearing, any provision of this Interim Order, including with respect to adequate protection, may be modified, supplemented, or continued by the Court.

14. No Obligation to Lend. Nothing in this Interim Order shall be construed to require any party to make any loan or advance to the Debtor.

15. Effectiveness. The terms and conditions of this Interim Order shall be immediately effective and enforceable upon its entry, notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or otherwise.

16. Retention of Jurisdiction. The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

IT IS SO ORDERED.

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

APPROVED FOR ENTRY:

*/s/ Robert J. Gonzales*

Robert J. Gonzales (TN BPR# 016705)
Hannah L. Berny (TN BPR# 039269)
**EMERGELAW, PLC**
4235 Hillsboro Pike, Suite 300
Nashville, Tennessee 37215
(615) 815-1535
robert@emerge.law
hannah@emerge.law

*Proposed Counsel for Debtors and Debtors in Possession*