**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ONCORE MOTOR GROUP LLC, and | ) | Case No. 26-BK-04298 |
| REULAND ELECTRIC CO., | ) | Case No. 26-BK-04300 |
| | ) | |
| Debtors.[1] | ) | Hon. Nancy B. King |
| | ) | Chapter 11 |
| | ) | (Joint Administration Requested) |

**EXPEDITED MOTION FOR ENTRY OF AN ORDER (A) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION (I) WAGES AND SALARIES, (II) REIMBURSABLE EMPLOYEE EXPENSES, (III) DEDUCTIONS AND PAYROLL TAXES, AND (IV) EMPLOYEE MEDICAL AND SIMILAR BENEFITS; (B) AUTHORIZING THE DEBTOR TO CONTINUE ITS EMPLOYEE PROGRAMS IN THE ORDINARY COURSE; AND (C) AUTHORIZING AND DIRECTING BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

Reuland Electric Co. ("Reuland" or the "Company") respectfully requests entry of an order on an expedited basis substantially in the form attached hereto as Exhibit A (the "Order") pursuant to sections 105(a), 363(b), 507(a)(4), 507(a)(5), and 541 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Company to pay certain prepetition wages and salaries, reimbursable employee expenses, deductions and payroll taxes, and employee medical and similar benefits; authorizing the Company to continue its employee programs in the ordinary course of business; and authorizing and directing banks and other financial institutions to honor all related checks and electronic payment requests. In support of this Motion, the Company relies upon, and

[1] The Debtors in these Chapter 11 cases, along with the last four digits of Debtors' federal tax identification numbers are: OnCore Motor Group LLC (3510) and Reuland Electric Co. (2980). The corporate headquarters and mailing address for OnCore Motor Group LLC is 6323 Pettus Road, Antioch, TN 37013-4722. The corporate headquarters for Reuland Electric Co. is 1615 Yeager Ave, La Verne, CA 91750 and the mailing address is 225 North Unruh, City of Industry, CA 91744.

incorporates by reference, the *Declaration of Grant R. Bibby in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed contemporaneously herewith, and further states as follows:

**SUMMARY OF EXPEDITED RELIEF REQUESTED**

1. **Expedited Relief Requested.** The Company requests entry of an Order authorizing it to pay approximately $272,000.00 in prepetition payroll obligations, consisting of unpaid wages and salaries together with payroll taxes and benefit costs on those amounts; approximately $40,000.00 in reimbursable employee expenses; and approximately $6,377.00 withheld from Employees and not yet remitted to third parties. The Company also requests authority to continue its employee compensation and benefit programs in the ordinary course of business and an order directing the Company's banks to honor all related checks and transfers. No Employee will be paid more than the priority cap set forth in section 507(a)(4) of the Bankruptcy Code on account of prepetition claims.

2. **Basis for Urgency.** The Company employs approximately 194 people across four manufacturing facilities in California and Michigan. The next non-exempt payroll funds on Wednesday, September 9, 2026 for a pay date of Thursday, September 10, 2026, and the next exempt payroll funds on Monday, September 14, 2026 for a pay date of Tuesday, September 15, 2026. Both payrolls include wages earned before the Petition Date. If those wages are not paid, the Company will lose the skilled machinists, winders, foundry operators, and engineers on whom the business entirely depends, many of whom have worked at Reuland for twenty or thirty years and several for fifty. That workforce cannot be replaced on any timeline that would permit this business to continue. The relief requested is necessary to avoid immediate and irreparable harm.

3. **Notice.** This Motion has been served on (i) all parties consenting to electronic service via the Court's CM/ECF system; (ii) the Office of the United States Trustee; and, via first class mail and via email as available, on (iii) all secured creditors of each Debtor and each party asserting an interest in cash collateral; and (iv) the 20 largest unsecured creditors of each Debtor. Debtors' proposed counsel informed the Office of the United States Trustee prior to the filing of the Chapter 11 Cases that first day motions would be filed.

4. **Suggested Hearing Date.** The Company respectfully requests a hearing date of September 8, 2026, but no later than September 9, 2026.

5. **Supporting Argument.** The Company supports this Motion as set forth below.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 507(a)(4), 507(a)(5), and 541 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

8. On September 3, 2026 (the "Petition Date"), the Company, along with its affiliate OnCore Motor Group LLC (collectively, the "Debtors"), filed with the Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

9. The Debtors are authorized to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the

date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

10. Contemporaneously with the filing of the petitions, the Debtors have filed a notice of election designating these Chapter 11 Cases as complex cases under Local Bankruptcy Rule 2081-2(b).

11. Reuland is an 89-year-old manufacturer of custom electric motors. It operates an aluminum casting foundry in City of Industry, California, a CNC machining operation in Brea, California, a motor winding, assembly, and testing facility in La Verne, California, and a manufacturing and testing facility for larger motors in Howell, Michigan. It serves more than 1,000 repeat customers, including the United States Navy, aerospace and defense manufacturers, and operators of moving bridges, dams, and flood control systems. At any given time the Company has between 500 and 700 unique custom motor orders in production.

12. Additional factual background regarding the Debtors, including their business operations, capital structure, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration, which is incorporated herein by reference.

## **THE EMPLOYEES**

13. As of the Petition Date, the Company employs approximately 194 people, consisting of 39 full-time exempt employees, 136 full-time non-exempt employees, eight part-time non-exempt employees, one non-exempt employee on leave under the Family and Medical Leave Act, six non-exempt employees receiving workers' compensation benefits, and four non-exempt employees who have been laid off and are receiving payments over time (collectively, the "Employees").

14. The Employees are not fungible. Reuland does not assemble a catalog product. It designs and builds motors to order, engineered to the specific performance characteristics each application requires, at ratings up to 1,000 horsepower and speeds in excess of 50,000 RPM. Producing those motors requires an aluminum foundry, a machine shop with more than fifteen CNC machining centers, a hand winding and assembly operation, and testing capability, all operating simultaneously on 500 to 700 different orders. Many Employees have practiced their craft at Reuland for twenty or thirty years, and several for fifty.

15. The Employees' skills, and their knowledge and understanding of the Company's operations, customer relationships, and infrastructure, are essential to the operation of the business. If they leave, the business stops, and with it the value of substantially all of the collateral securing the Company's secured debt.

16. Throughout the two and a half years of relocation and financial strain described in the First Day Declaration, the Company met its payroll every week and every month without exception. It should not miss one now that it is under the protection of this Court.

## THE EMPLOYEE OBLIGATIONS

17. The prepetition payroll the Company seeks authority to pay, representing amounts earned by Employees before the Petition Date and unpaid as of that date, is as follows. Because amounts withheld from Employees are funded out of gross compensation, the payroll tax and benefit figures below state the Company's employer-side obligations and do not duplicate the amounts withheld from Employees:

| Prepetition Payroll | Amount |
|---|---|
| Non-exempt (hourly) — gross wages, employer payroll taxes, and employer benefit costs | $179,000.00 |
| Exempt (salaried) — gross salaries, employer payroll taxes, and employer benefit costs | $93,000.00 |
| **Total Prepetition Payroll** | **$272,000.00** |

18. In addition to the prepetition payroll, the Company seeks authority to pay the following prepetition amounts, each of which is described in detail below:

| Other Prepetition Employee Obligations | Amount |
|---|---|
| Reimbursable Employee Expenses | $40,000.00 |
| Deductions Withheld and Not Yet Remitted to Third Parties | $6,377.00 |
| **Total** | **$46,377.00** |

**A. Unpaid Compensation**

19. In the ordinary course of business, the Company incurs payroll obligations to the Employees, generally comprised of wages and salaries. Non-exempt Employees are paid weekly, with each payroll funded on Wednesday for a Thursday pay date. Exempt Employees are paid semi-monthly, on the fifteenth day and the last day of each month, with each payroll funded one business day before the pay date. If a scheduled exempt pay date falls on a weekend or holiday, the pay date moves to the preceding business day. If a scheduled non-exempt pay date falls on a weekend or holiday, the payroll is funded on Tuesday and the pay date moves to Wednesday.

20. The last non-exempt payroll was funded on September 2, 2026 and paid on September 3, 2026. The last exempt payroll was paid on August 31, 2026. Because all Employees are paid in arrears, Employees had not been paid all of their prepetition wages as of the Petition Date (the "Unpaid Compensation").

21. Unpaid Compensation consists of approximately $144,000.00 in gross wages earned by non-exempt Employees over the four days from Monday, August 31, 2026 through the Petition Date, payable on September 10, 2026, and approximately $60,000.00 in gross salaries earned by exempt Employees over the three days from Tuesday, September 1, 2026 through the Petition Date, payable on September 15, 2026. The Company's share of payroll taxes on those amounts is approximately $15,000.00 and $17,000.00 respectively, and the Company's share of benefit costs is approximately $20,000.00 and $16,000.00 respectively. The fully loaded prepetition payroll is therefore approximately $179,000.00 for non-exempt Employees and approximately $93,000.00 for exempt Employees, or approximately $272,000.00 in the aggregate. These figures are the Company's good faith estimates.

22. Some Employees may be entitled to additional compensation because discrepancies may exist between amounts paid and amounts that should have been paid, or because payroll checks issued on or before the Petition Date may not have been presented for payment or may not have cleared the banking system as of the Petition Date.

23. As of the Petition Date, no Employee is owed more than $17,150.00 on account of Unpaid Compensation. The Company does not seek authority to pay any Employee more than the priority amount established by section 507(a)(4) of the Bankruptcy Code on account of prepetition claims.

24. The Unpaid Compensation includes wages earned during the prepetition period by officers of the Company. Because the exempt payroll period covered only September 1 through September 3, 2026, the prepetition amount attributable to any officer is significantly less than the priority cap.

**B. Deductions and Payroll Taxes**

25. During each applicable pay period the Company routinely deducts certain amounts from paychecks, including garnishments, child support, and similar deductions, and other pre-tax and after-tax deductions payable pursuant to the Employee benefit plans described below, such as an Employee's share of health care benefits and insurance premiums, 401(k) contributions, legally ordered deductions, and miscellaneous deductions (collectively, the "Deductions").

26. The Deductions include child support withheld under orders issued in California and Michigan. In the most recent pay cycles, the Company withheld $727.75 from the weekly non-exempt payroll on account of eleven withholding orders covering nine Employees, and $1,161.61 from the semi-monthly exempt payroll, together with $75.00 and $53.93 respectively on account of state tax levies. The Company remits these amounts to the applicable state disbursement units and taxing authorities each pay period.

27. As of the Petition Date, approximately $6,377.00 had been withheld from the non-exempt payroll and had not yet been forwarded to the applicable recipient. The Company accordingly seeks authority to forward all prepetition and postpetition Deductions to the applicable third-party recipients.

28. The Company is also required by law to withhold from an Employee's wages amounts related to federal, state, and local income taxes and social security and Medicare taxes for remittance to the appropriate taxing authority (the "Withheld Amounts"). The Company must then match from its own funds the social security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (the "Employer Payroll Taxes" and, together with the Withheld Amounts, the "Payroll Taxes"). The

Company seeks authority to continue to honor and process all prepetition and postpetition payments for Payroll Taxes.

29. The Deductions and the Withheld Amounts are held by the Company in trust for third parties and are not property of the estate under section 541 of the Bankruptcy Code. The Company holds them only as a conduit. Failure to remit them may also expose the Company's officers and directors to personal liability, which would distract management at precisely the moment their full attention is required by the business.

**C. Payroll Processing**

30. Kronos (the "Processor") processes the Company's payroll. All payrolls are funded from the Company's account at Hilltop Bank. The Company pays the Processor a monthly fee of $5,100.00 for payroll processing services, which is debited automatically from the Company's account. The Company separately rents time clock equipment from the Processor for its California and Michigan facilities, which is paid by check.

31. The Company cannot pay its Employees without the Processor. The Company accordingly seeks authority to pay the Processor's prepetition invoice and to continue paying the Processor's fees in the ordinary course, together with all other costs incident to the processing and payment of the Employee Wages and Benefits.

**D. Reimbursable Expenses**

32. Prior to the Petition Date the Company reimbursed Employees for certain expenses incurred on the Company's behalf within the scope of their employment (the "Reimbursable Expenses"), consisting primarily of travel expenses including mileage and meals, and of tools and supplies. As of the Petition Date, approximately $40,000.00 in Reimbursable Expenses remained outstanding.

33. The Reimbursable Expenses were incurred on the Company's behalf and with the understanding that they would be reimbursed. Employees advanced their own funds for the Company's benefit. The Company accordingly requests authority to continue reimbursing the Reimbursable Expenses in accordance with prepetition practices, to modify its prepetition policies relating thereto as it deems appropriate, and to pay all Reimbursable Expenses that accrued prepetition or that accrue postpetition but relate to the prepetition period.

**E. Employee Benefit Programs**

***i. Medical, Prescription Drug, Dental, Vision, and Related Plans***

34. The Company offers Employees the ability to participate in a number of insurance and benefit programs, including health care, prescription drug, dental, and vision plans, life and accidental death and dismemberment insurance, short-term and long-term disability coverage, flexible spending arrangements, and retirement savings plans (collectively, with the programs described below, the "Employee Benefit Programs"). The Company requests authority to honor its obligations under the Employee Benefit Programs and to continue them in the ordinary course.

35. The Company also maintains workers' compensation coverage for its Employees at statutorily required levels. Relief with respect to the Company's insurance program, including its workers' compensation coverage and any amounts owed to the workers' compensation carrier, is sought by separate motion filed contemporaneously herewith.

***ii. Paid Time Off and Leaves of Absence***

36. The Company provides Employees with paid time off allowing an Employee to take time from work for vacation, illness, or personal reasons with pay ("PTO"). PTO accrues and is used in the ordinary course, and the Company pays accrued PTO in the ordinary course

consistent with its historical practice. As of the Petition Date, accrued and unpaid PTO totals approximately $591,515.86, an average of approximately $3,050.00 per Employee.

37. In the ordinary course of business the Company also allows Employees to take leaves of absence required by law, including under the Family and Medical Leave Act and the Americans with Disabilities Act ("Leaves of Absence").

38. The Company requests authority to continue to honor its PTO and Leaves of Absence policies in the ordinary course and to honor and pay any prepetition amounts related thereto. Because PTO is taken in the ordinary course rather than paid out in cash, Employees' use of accrued prepetition PTO will not create material cash flow requirements beyond the Company's normal payroll obligations. The Company does not seek authority to pay any Employee accrued PTO in an amount that, together with Unpaid Compensation, exceeds the priority cap established by section 507(a)(4) of the Bankruptcy Code. Accrued vacation is payable as wages on separation under the law of California, where three of the Company's four facilities are located. Cal. Lab. Code § 227.3. The Company requests authority to pay accrued PTO to any Employee whose employment ends, subject to the same cap.

## RELIEF REQUESTED

39. By this Motion, the Company requests entry of an order:

(a) authorizing the Company to pay and honor, in the ordinary course of business, prepetition claims and obligations on account of Unpaid Compensation, Deductions, Payroll Taxes, Reimbursable Expenses, and the Employee Benefit Programs, in an aggregate amount not to exceed approximately $318,377.00, and in no event more than the priority amount established by section 507(a)(4) of the Bankruptcy Code with respect to any individual Employee;

(b) authorizing the Company to continue its Employee compensation and benefit practices, programs, and policies as in effect on the Petition Date, and to pay obligations arising under them that become due during these Chapter 11 Cases;

(c) confirming the Company's right to modify, change, or discontinue any Employee compensation or benefit practice, program, or policy, and to implement new ones, in the ordinary course of business and without further order of this Court, so long as such action does not materially increase the Company's obligations;

(d) authorizing the Company to pay all processing fees and other costs incident to the payment of the foregoing, including the fees and outstanding invoice of the Processor; and

(e) authorizing and directing all banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and all electronic payment requests relating to the foregoing, whether presented or submitted before or after the Petition Date, and authorizing such institutions to rely on the Company's designation of any particular check or electronic payment request as authorized by the Order.

40. The Company also requests authority to reissue any check or electronic payment originally given in payment of any prepetition amount authorized to be paid under the Order that was not cleared by the applicable bank or financial institution.

## BASIS FOR RELIEF

### A. The Employee Obligations Are Entitled to Priority and the Relief Affects Only Timing

41. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code afford priority status to claims for wages, salaries, and commissions earned within 180 days before the Petition Date, and

to contributions to employee benefit plans arising from services rendered within that period, each subject to a statutory cap. 11 U.S.C. §§ 507(a)(4), 507(a)(5).

42. Because the Company does not seek authority to pay any Employee more than the applicable statutory cap, the relief requested affects only the timing, and not the amount, of payments the Employees would receive in any event. No creditor is prejudiced. What the relief accomplishes is to pay Employees now, when the money is needed to meet their household obligations and when their continued service is essential, rather than at some later point in these cases.

43. Separately, the Deductions and the Withheld Amounts are held in trust for third parties and are not property of the estate under section 541 of the Bankruptcy Code. The Company may remit them without further authority, and seeks confirmation of that authority out of an abundance of caution.

**B. Section 363(b) Authorizes the Relief**

44. Section 363(b)(1) of the Bankruptcy Code permits a debtor in possession, after notice and a hearing, to use property of the estate other than in the ordinary course of business. To obtain approval under section 363(b), a debtor must articulate a business justification other than the mere appeasement of major creditors. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

45. The business justification here is not close. The Company's assets consist of receivables generated by shipping custom motors, inventory that becomes those motors, and the equipment used to build them. Every one of those assets has value only because a workforce shows up and converts material into finished product. If the Employees are not paid, they will not stay,

and the Company cannot replace a foundry operator or a motor winder with thirty years of Reuland-specific experience. The collateral does not hold its value while that search occurs.

**C. Section 105(a) and the Necessity Doctrine Support the Relief**

46. Section 105(a) of the Bankruptcy Code provides that the Court may issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code, and authorizes a court to permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor. *See In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

47. The Company's Employees are the paradigm case. The commencement of these Chapter 11 Cases will create anxiety in a workforce that has already lived through two and a half years of relocation and financial strain and has now watched its employer's lender write to its customers and file suit against the Company and its chief executive. In that environment, a missed or reduced paycheck would not merely cause hardship. It would tell 194 people that the Company cannot pay them, and they would act accordingly.

**D. Rule 6003 Is Satisfied**

48. Bankruptcy Rule 6003 provides that the Court shall not, within 21 days after the filing of the petition, grant relief regarding a motion to pay all or part of a prepetition claim, except to the extent that relief is necessary to avoid immediate and irreparable harm. Fed. R. Bankr. P. 6003(b).

49. That standard is met. The next non-exempt payroll funds six days after the Petition Date and the next exempt payroll funds eleven days after the Petition Date. Both include

prepetition wages. Waiting 21 days means missing both. The Company has limited the relief requested to amounts that must be paid within that window to avoid the loss of its workforce.

**E. No Assumption; Discretion Preserved**

50. The Company does not at this time seek to assume any executory contract, and nothing in this Motion or the Order should be deemed an assumption or adoption of any Employee agreement, program, or policy. The Company retains discretion not to make any payment contemplated by this Motion with respect to any particular Employee. Nothing in this Motion or the Order shall confer upon any Employee or other party an entitlement to administrative priority or any other preference in distribution from the estate.

**F. The Company's Banks Should Be Authorized to Honor Related Payments**

51. Under the Company's existing cash management system, checks and wire transfer requests can be readily identified as relating to authorized payments on account of prepetition Employee claims. Checks and transfer requests other than those relating to authorized payments will not be honored inadvertently. All applicable banks and financial institutions should accordingly be authorized and directed, when requested by the Company, to receive, process, honor, and pay any and all checks and wire transfer requests related to the Employees.

## RESERVATION OF RIGHTS

52. Nothing in this Motion or in any order entered on it shall constitute (a) an admission as to the validity, priority, or amount of any claim against the Company; (b) a waiver of any right, claim, defense, counterclaim, or cause of action of the Company or its estate, including under sections 502, 542 through 553, and 558 of the Bankruptcy Code; (c) an assumption or rejection of any executory contract or unexpired lease; or (d) a promise or requirement to pay any particular claim. The Company reserves all rights to contest the amount or basis of any claim on any ground.

## NOTICE

53. Notice has been given as indicated in paragraph 3, above. The Company submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth herein, the Company respectfully requests that the Court grant this Motion, enter the proposed Order submitted herewith, and grant the Company such other and further relief to which it may be entitled.

Dated: September 3, 2026.

Respectfully submitted,

*/s/ Robert J. Gonzales*

Robert J. Gonzales (TN BPR# 016705)
Hannah L. Berny (TN BPR# 039269)
**EMERGELAW, PLC**
4235 Hillsboro Pike, Suite 300
Nashville, Tennessee 37215
(615) 815-1535
robert@emerge.law
hannah@emerge.law

*Proposed Counsel for Debtors and Debtors in Possession*

**EXHIBIT A**

***Proposed Order***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ONCORE MOTOR GROUP LLC, and | ) | Case No. 26-BK-04298 |
| REULAND ELECTRIC CO., | ) | Case No. 26-BK-04300 |
| | ) | |
| Debtors.[2] | ) | Hon. Nancy B. King |
| | ) | Chapter 11 |
| | ) | (Joint Administration Requested) |

**EXPEDITED ORDER (A) AUTHORIZING THE DEBTOR TO PAY CERTAIN PREPETITION (I) WAGES AND SALARIES, (II) REIMBURSABLE EMPLOYEE EXPENSES, (III) DEDUCTIONS AND PAYROLL TAXES, AND (IV) EMPLOYEE MEDICAL AND SIMILAR BENEFITS; (B) AUTHORIZING THE DEBTOR TO CONTINUE ITS EMPLOYEE PROGRAMS IN THE ORDINARY COURSE; AND (C) AUTHORIZING AND DIRECTING BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

Upon the expedited motion (the "Motion") of Reuland Electric Co. (the "Debtor" or the "Company") for entry of an order authorizing the Company to pay certain prepetition employee wages and benefits, to continue its employee programs in the ordinary course, and directing banks and other financial institutions to honor all related checks and electronic payment requests; and further upon the statements of counsel and the witnesses at the hearing; it appearing that the relief requested is in the best interests of the Company's estate, its creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to

[2] The Debtors in these Chapter 11 cases, along with the last four digits of Debtors' federal tax identification numbers are: OnCore Motor Group LLC (3510) and Reuland Electric Co. (2980). The corporate headquarters and mailing address for OnCore Motor Group LLC is 6323 Pettus Road, Antioch, TN 37013-4722. The corporate headquarters for Reuland Electric Co. is 1615 Yeager Ave, La Verne, CA 91750 and the mailing address is 225 North Unruh, City of Industry, CA 91744.

28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; the Court finding that the relief requested is necessary to avoid immediate and irreparable harm within the meaning of Bankruptcy Rule 6003; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED as follows:

1. The Motion is GRANTED as set forth herein.

2. The Company is authorized, but not directed, to pay and honor prepetition claims and obligations on account of Unpaid Compensation, Deductions, Payroll Taxes, Reimbursable Expenses, and the Employee Benefit Programs, in accordance with the Company's stated policies and prepetition practices, in an aggregate amount not to exceed $318,377.00.

3. Notwithstanding any other provision of this Order, the Company shall not pay to or on behalf of any Employee an aggregate of more than $17,150.00 on account of prepetition wages, salaries, commissions, vacation, severance, and sick leave pay, pursuant to 11 U.S.C. § 507(a)(4). In determining the aggregate amount to be paid in contributions to employee benefit plans, the formula set forth in 11 U.S.C. § 507(a)(5) shall be used. Employment taxes shall be paid in accordance with 11 U.S.C. § 507(a)(8)(D).

4. The Company is authorized, but not directed, to continue to allocate, withhold, and distribute the Deductions and the Payroll Taxes in accordance with its stated policies and prepetition practices. The Deductions and the amounts withheld from Employees on account of Payroll Taxes are held in trust for third parties and are not property of the estate.

5. The Company is authorized, but not directed, to pay the Reimbursable Expenses in accordance with its stated policies and prepetition practices, including prepetition amounts owed on account of Reimbursable Expenses.



Case 3:26-bk-04298 Doc 9 Filed 09/04/26 Entered 09/04/26 03:25:17 Desc Main
Document Page 19 of 21

6. The Company is authorized, but not directed, to continue and maintain the Employee Benefit Programs, to make any necessary contributions to those programs, and to pay any unpaid premium, claim, or other amount owed as of the Petition Date or arising thereafter in the ordinary course. Nothing in this Order addresses the Company's workers' compensation coverage, relief as to which is sought by separate motion.

7. The Company is authorized to pay all processing fees associated with, and all costs incident to, the payment of the amounts authorized by this Order, including the fees of, and the outstanding prepetition invoice of, the Company's payroll processor.

8. The Company is authorized to continue, modify, change, or discontinue any Employee compensation or benefit practice, program, or policy, and to implement new ones, in the ordinary course of business and without further order of this Court, provided that no such action materially increases the Company's obligations.

9. All banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations authorized herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, whether presented or submitted before or after the Petition Date, and are authorized to rely on the Company's designation of any particular check or electronic payment request as authorized by this Order.

10. The Company is authorized to reissue any check or electronic payment originally given in payment of any prepetition amount authorized to be paid under this Order that was not cleared by the applicable bank or other financial institution.

11. Nothing in this Order constitutes (a) an admission as to the validity, priority, or amount of any claim; (b) a waiver of any right, claim, defense, counterclaim, or cause of action of

the Company or its estate; (c) an assumption or rejection of any executory contract or unexpired lease; or (d) a requirement to pay any particular claim.

12. The Company is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

13. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding Bankruptcy Rules 6004(h), 7062, or otherwise.

14. The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

IT IS SO ORDERED.

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

APPROVED FOR ENTRY:

*/s/ Robert J. Gonzales*
Robert J. Gonzales (TN BPR# 016705)
Hannah L. Berny (TN BPR# 039269)
**EMERGELAW, PLC**
4235 Hillsboro Pike, Suite 300
Nashville, Tennessee 37215
(615) 815-1535
robert@emerge.law
hannah@emerge.law

*Proposed Counsel for Debtors and Debtors in Possession*