**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ONCORE MOTOR GROUP LLC, and | ) | Case No. 26-BK-04298 |
| REULAND ELECTRIC CO., | ) | Case No. 26-BK-04300 |
| | ) | |
| Debtors.[1] | ) | Hon. Nancy B. King |
| | ) | Chapter 11 |
| | ) | (Joint Administration Requested) |

**EXPEDITED MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE THEIR INSURANCE PROGRAM, (II) AUTHORIZING THE DEBTORS TO PAY ALL PREPETITION AND POSTPETITION OBLIGATIONS WITH RESPECT THERETO, AND (III) AUTHORIZING BANKS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

OnCore Motor Group LLC and Reuland Electric Co., the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), respectfully request entry of an order on an expedited basis substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 362, 363, 503(b), 1107(a), and 1108 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to continue their insurance program and to pay prepetition and postpetition obligations relating to that program. In support of this Motion, the Debtors rely upon, and incorporate by reference, the *Declaration of Grant R. Bibby in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed contemporaneously herewith, and further state as follows:

[1] The Debtors in these Chapter 11 cases, along with the last four digits of Debtors' federal tax identification numbers are: OnCore Motor Group LLC (3510) and Reuland Electric Co. (2980). The corporate headquarters and mailing address for OnCore Motor Group LLC is 6323 Pettus Road, Antioch, TN 37013-4722. The corporate headquarters for Reuland Electric Co. is 1615 Yeager Ave, La Verne, CA 91750 and the mailing address is 225 North Unruh, City of Industry, CA 91744.

## SUMMARY OF EXPEDITED RELIEF REQUESTED

1. **Expedited Relief Requested.** The Debtors request entry of an Order authorizing them to maintain their insurance program without interruption. Reuland carries property, general liability, umbrella, automobile, cyber, employment practices, executive, and workers' compensation coverage across four manufacturing facilities in two states. The Debtors seek authority to pay premiums, installments, deductibles, retentions, claims, loss funding, collateral, taxes, fees, and broker commissions as they come due in the ordinary course, and to renew, modify, supplement, or replace coverage without further order of this Court. The program renewed on September 1, 2026, and the Debtors seek authority to pay the amounts associated with that renewal and with the workers' compensation program in the ordinary course.

2. **Basis for Urgency.** Reuland's commercial program renewed effective September 1, 2026 and runs through September 1, 2027, so all but two days of the coverage period falls within these Chapter 11 Cases. The renewal amount is payable by October 1, 2026, and the first monthly installment of the new term comes due the same day. Workers' compensation coverage is separately mandatory in every state in which Reuland operates, and a lapse would require Reuland to cease operations at four facilities employing approximately 194 people. Maintaining insurance is also required by the Operating Guidelines of the Office of the United States Trustee, and the failure to maintain appropriate insurance is cause for conversion or dismissal under section 1112(b)(4)(C) of the Bankruptcy Code.

3. **Notice.** This Motion has been served on (i) all parties consenting to electronic service via the Court's CM/ECF system; (ii) the Office of the United States Trustee; and, via first class mail and via email as available, on (iii) all secured creditors of each Debtor and each party asserting an interest in cash collateral; and (iv) the 20 largest unsecured creditors of each Debtor.

Debtors' proposed counsel informed the Office of the United States Trustee prior to the filing of the Chapter 11 Cases that first day motions would be filed.

4. **Suggested Hearing Date.** The Debtors respectfully request a hearing date of September 8, 2026, but no later than September 9, 2026.

5. **Supporting Argument.** The Debtors support this Motion as set forth below.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory and legal predicates for the relief sought herein are sections 105(a), 362, 363, 503(b), 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

8. On September 3, 2026 (the "Petition Date"), the Debtors filed with the Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

9. The Debtors are authorized to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

10. Contemporaneously with the filing of the petitions, the Debtors have filed a notice of election designating these Chapter 11 Cases as complex cases under Rule 2081-2(b) of the Local Rules of Court for the United States Bankruptcy Court, Middle District of Tennessee (the "Local Rules").

11. Reuland Electric Co. ("Reuland") is an 89-year-old manufacturer of custom electric motors. It operates an aluminum casting foundry in City of Industry, California, a CNC machining operation in Brea, California, a motor winding, assembly, and testing facility in La Verne, California, and a manufacturing and testing facility for larger motors in Howell, Michigan, together with an engineering office in Ohio. It employs approximately 194 people and serves more than 1,000 repeat customers.

12. Additional factual background regarding the Debtors, including their business operations, capital structure, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration, which is incorporated herein by reference.

## THE INSURANCE PROGRAM

13. In the ordinary course of business the Debtors maintain commercial insurance coverage through a number of carriers (collectively, the "Insurers") providing coverage for, among other things, commercial automobile, property, general liability, umbrella, fiduciary liability, crime, kidnap ransom and extortion, workplace violence expense, business travel accident, cyber liability, employment practices liability, and workers' compensation and employer's liability (collectively, the "Insurance Program" and each policy a "Policy"). A schedule of the Policies, identifying the legal name of each Insurer, the policy number, the policy term, and, for the commercial Policies, the annual premium, is attached as Attachment 1.

14. All Policies are maintained by Reuland. OnCore Motor Group LLC does not maintain any insurance policy of its own.

15. The Debtors believe Attachment 1 is a complete list of the Policies as of the Petition Date. To the extent any Policy has been inadvertently omitted, the Debtors request that the Order apply to all Policies. The Debtors separately maintain employee benefit programs, including

health, dental, vision, disability, and life insurance, which are addressed in the Debtors' contemporaneously filed wage motion and are not the subject of this Motion.

**A. The Commercial Policies and the September 1 Renewal**

16. The commercial Policies renewed effective September 1, 2026, two days before the Petition Date, and run through September 1, 2027. Annual premiums for the 2026 to 2027 policy period total approximately $391,074.05, including associated fees and taxes.

17. The premiums for the commercial automobile, property, general liability, and umbrella coverages are billed by Chubb in ten monthly installments, as is the premium for the executive package. Premiums for the business travel accident, cyber liability, and employment practices liability coverages are billed annually, as is a third-party claims administration fee of $12,000.00. The Debtors do not finance any insurance premium through a premium finance company.

18. The amounts that came due on September 1, 2026 are as follows:

| Premiums Due September 1, 2026 | Amount |
|---|---:|
| First Chubb installment — automobile, property, general liability, umbrella | $79,935.11 |
| First Chubb installment — executive package | $3,698.85 |
| Business travel accident (annual) | $1,500.00 |
| Cyber liability (annual) | $22,037.18 |
| Employment practices liability (annual) | $24,968.83 |
| Third-party claims administration fee (annual) | $12,000.00 |
| **Total due September 1, 2026** | **$144,139.97** |

19. That amount was not paid before the Petition Date and remains outstanding. It must be paid on or before October 1, 2026. The remaining nine installments are payable monthly in the amount of $27,437.12, beginning October 1, 2026 and continuing through June 1, 2027. The

Debtors request authority to pay the September 1, 2026 amount and to continue making the monthly installment payments in the ordinary course as they come due.

20. The general liability policy, which carries the largest single premium at approximately $155,372.00, provides the products liability coverage on which Reuland's customers rely. Reuland has not had a products liability claim in more than fifteen years. Of the $12,000.00 claims administration fee, $5,000.00 is refundable if no claim is made during the policy period.

21. There may be additional prepetition amounts owed to the Insurers of which the Debtors are not presently aware, including amounts that become payable following a premium audit conducted after the Petition Date. The Debtors request authority to pay any such amounts in their discretion.

**B. The Workers' Compensation Program**

22. Reuland maintains workers' compensation and employer's liability coverage through Sentry Casualty Company ("Sentry") under two policies, each running from March 1, 2026 through March 1, 2027 (the "Workers' Compensation Program"). Policy number A0244467001 is a large-deductible program covering all states other than Wisconsin, under which Reuland bears the first $150,000.00 of each claim. Policy number A0244467002 is a retrospectively rated program covering Wisconsin. The Workers' Compensation Program is funded rather than fully insured. For the 2026 to 2027 program year Reuland pays Sentry a pay-in premium of $339,155.00, loss funding of $543,191.00, and a program administration fee of $27,450.00, for a total of $909,796.00, payable in monthly installments of approximately $75,816.00. Reuland has also posted $200,000.00 in cash with Sentry as security. Loss funding is

not a premium. It is money advanced against claims that fall within Reuland's retention, and any portion not used to pay claims is returned to Reuland.

23. As of the Petition Date, Reuland owes the Workers' Compensation Program approximately $245,464.32, consisting of approximately $93,835.00 attributable to a retrospective premium adjustment for a prior policy year and approximately $151,629.32 attributable to the current program year, which represents two monthly installments. Sentry holds the $200,000.00 in cash security posted by Reuland, and holds the unused balance of the loss funding Reuland has advanced. The Debtors reserve all rights with respect to both, and nothing in this Motion or in any order granting it constitutes a consent to, or an authorization of, any setoff, recoupment, or application of either against any prepetition obligation.

24. The retrospective portion is not final. Sentry values retrospective adjustments as of September 30 of each year and expects to release the next adjustment in October or November 2026, which will reflect a second adjustment for the March 1, 2024 through March 1, 2025 policy term and a first adjustment for the March 1, 2025 through March 1, 2026 policy term. The amount owed may increase or decrease as a result, and the Debtors request authority to pay the adjusted amount as finally determined.

25. As of the Petition Date, eight claims remain open under the Workers' Compensation Program, four of which are in litigation. Total incurred losses and expenses on those claims are approximately $640,398.00, of which approximately $343,414.00 has been paid and approximately $245,497.00 remains reserved. Because Reuland bears the first $150,000.00 of each claim under policy number A0244467001, substantially all of that exposure is borne by Reuland rather than by the carrier. That exposure is bounded. Losses within Reuland's retention are capped at $888,597.00 in the aggregate, above which Sentry bears the loss, and $543,191.00 of the retained

exposure for the current program year is already funded. If losses develop adversely, the maximum cost of the current program year is $1,316,612.00, or $406,816.00 more than the amount Reuland has committed to fund.

26. Workers' compensation coverage is mandatory in every state in which Reuland operates. A lapse would require Reuland to cease operations at its facilities and could expose its officers to personal liability. The Debtors accordingly request authority to continue the Workers' Compensation Program and to pay, in the ordinary course, all premiums, loss funding installments and loss fund deposits, retrospective adjustments, deductible reimbursements, claim payments within Reuland's retention, program administration fees, and collateral and security deposits, including any additional collateral Sentry may require, arising under it, whether those obligations arose before or after the Petition Date.

**C. The Insurance Broker**

27. In the ordinary course of business the Debtors retain TrueNorth Companies, L.C. as their insurance broker (the "Broker") to assist in procuring, negotiating, and administering the Insurance Program, and pay the Broker's commissions in the ordinary course (the "Broker Fees"). Premiums for the executive package, business travel accident, cyber liability, and employment practices liability coverages are remitted to the Broker, which in turn remits them to the applicable Insurer. Premiums for the remaining Policies are remitted directly to the Insurer.

28. The Broker is essential to the Debtors' ability to obtain and maintain coverage. It structures and manages the Insurance Program, and the Debtors do not have access to certain markets except through the Broker. The Debtors believe they are current in their obligations to the Broker. The Debtors request authority to continue retaining the Broker and to pay Broker Fees, whether incurred before or after the Petition Date, in the ordinary course of business.

## RELIEF REQUESTED

29. By this Motion, the Debtors request entry of an order:

(a) authorizing the Debtors to continue the Insurance Program without interruption, on the same basis and to the same extent as in effect immediately prior to the Petition Date;

(b) authorizing the Debtors to pay prepetition obligations arising under the Insurance Program, including approximately $144,139.97 associated with the September 1, 2026 renewal and approximately $245,464.32 owed under the Workers' Compensation Program, in each case on such payment terms as the Debtors may agree with the applicable Insurer, including payment over time;

(c) authorizing the Debtors to pay all postpetition premiums, installments, deductibles, retentions, claim payments, loss funding installments and loss fund deposits, collateral and security deposits, including any additional collateral required by an Insurer, retrospective premium adjustments, taxes, surcharges, assessments, and administrative fees arising under the Insurance Program as they come due in the ordinary course;

(d) authorizing the Debtors to renew, revise, extend, supplement, modify, replace, or terminate any Policy, and to enter into new insurance arrangements including tail or run-off coverage, in the ordinary course of business and in the Debtors' business judgment, without further order of this Court;

(e) authorizing the Debtors to continue retaining the Broker and to pay Broker Fees, whether incurred before or after the Petition Date, in the ordinary course; and

(f) authorizing and directing all banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and all electronic payment requests relating to the foregoing, whether presented or submitted before or after the Petition Date.

30. The Debtors do not presently have the liquidity to pay all prepetition obligations arising under the Insurance Program, and the budget filed in support of the Debtors' contemporaneously filed cash collateral motion does not provide for their payment at this time. The Debtors seek authority to pay these amounts as liquidity permits, and in particular in the event any Insurer threatens cancellation or non-renewal of coverage. Given the consequences of a lapse, the Debtors submit that the authority to act promptly in that circumstance, without the delay of a further motion, is itself part of the relief necessary to avoid immediate and irreparable harm.

## BASIS FOR RELIEF

### A. Maintaining Insurance Is Required by Law, by the Operating Guidelines, and by the Bankruptcy Code Itself

31. Maintenance of the Insurance Program is required by the Operating Guidelines promulgated by the Office of the United States Trustee for Region 8, by the laws of the states in which the Debtors operate, and by a number of the Debtors' contracts and leases, including their credit agreements and customer contracts.

32. It is also required by the Bankruptcy Code. Section 1112(b)(4)(C) provides that the failure to maintain appropriate insurance that poses a risk to the estate or to the public constitutes cause for conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). A debtor that operates an aluminum foundry, a machine shop, and two assembly plants without property, general liability, and workers' compensation coverage is not a debtor that can remain in chapter 11.

### B. Payment of the Insurance Obligations Is Authorized Under Sections 1107(a) and 1108

33. The Debtors operate their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code and as fiduciaries for their estates. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in those duties is the obligation to protect and preserve the estate, including an operating business's going-concern value. *Id.*

34. Allowing coverage to lapse would be inconsistent with that duty. If the Debtors fail to pay premiums, the Insurers may cancel the Policies, decline to renew them, or refuse to write the Debtors in the future. Replacement coverage obtained on an emergency basis by a company in chapter 11 would be materially more expensive, if it were available at all.

**C. Sections 363(b) and 503(b) Authorize the Relief**

35. Section 503(b)(1)(A) permits a debtor to incur the actual, necessary costs and expenses of preserving the estate. Section 363(b)(1) permits a debtor in possession, after notice and a hearing, to use property of the estate other than in the ordinary course of business where a sound business purpose justifies the action. *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999).

36. Where a debtor articulates a valid business justification, a presumption arises in favor of its decision. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). The justification here is that insurance premiums purchase the protection that keeps the estate's assets, and the estate itself, from being exposed to a single uninsured loss.

**D. Section 105(a) and the Doctrine of Necessity Support the Relief**

37. Section 105(a) permits this Court to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code, including pre-plan payment of a prepetition obligation essential to the continued operation of the debtor. *See In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992); *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999). Courts within this Circuit have relied on that authority to permit payment of critical prepetition claims. *See In re Corner Home Care, Inc.*, 438 B.R. 122, 126 (Bankr. W.D. Ky. 2010) (collecting cases, including *In re Phoenix Rest. Grp., Inc.*, No. 3-01-12036 (Bankr. M.D. Tenn. 2001)).

38. The necessity here requires little elaboration. Reuland cannot operate a foundry without property and liability coverage. It cannot lawfully employ a single person in California or Michigan without workers' compensation coverage. And a lapse would give the United States Trustee cause to seek conversion or dismissal under section 1112(b)(4)(C).

**E. Rule 6003 Is Satisfied and Rule 6004(h) Should Be Waived**

39. Bankruptcy Rule 6003 permits the Court to grant relief on a motion to pay all or part of a prepetition claim within 21 days after the Petition Date to the extent necessary to avoid immediate and irreparable harm. That standard is met. The September 1, 2026 premiums are already past due and must be paid by October 1, 2026. The next monthly installment comes due the same day. Waiting 21 days risks cancellation of coverage across the entire program.

40. For the same reasons, the Debtors request a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it applies.

**F. The Debtors' Banks Should Be Authorized to Honor Related Payments**

41. The Debtors request that all applicable banks and financial institutions be authorized and directed to receive, process, honor, and pay all checks presented for payment of, and all fund transfer requests relating to, the obligations the Debtors seek authority to pay by this Motion, whether presented or submitted before or after the Petition Date, and to rely on the Debtors' designation of any particular check or transfer request as authorized by the Order.

## RESERVATION OF RIGHTS

42. Nothing in this Motion or in any order entered on it shall constitute (a) an admission as to the validity, priority, or amount of any claim against the Debtors; (b) a waiver of any right, claim, defense, counterclaim, or cause of action of the Debtors or their estates; (c) the assumption, adoption, or rejection of any Policy or related agreement under section 365 of the Bankruptcy

Code; or (d) a requirement to pay any particular claim. The Debtors reserve all rights to contest the validity or amount of any obligation arising under the Insurance Program.

## NOTICE

43. Notice has been given as indicated in paragraph 3, above. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court grant this Motion, enter the proposed Order submitted herewith, and grant the Debtors such other and further relief to which they may be entitled.

Dated: September 3, 2026.

Respectfully submitted,

*/s/ Robert J. Gonzales*
Robert J. Gonzales (TN BPR#016705)
Hannah L. Berny (TN BPR# 039269)
**EMERGELAW, PLC**
4235 Hillsboro Pike, Suite 300
Nashville, Tennessee 37215
(615) 815-1535
robert@emerge.law
hannah@emerge.law

*Proposed Counsel for Debtors and Debtors in Possession*

## ATTACHMENT 1

## The Insurance Program

| Coverage | Insurer (legal name) | Policy Number | Policy Term | Annual Premium |
|---|---|---|---|---|
| Commercial Automobile | Chubb Group of Insurances | 73237130 | 9/1/26 - 9/1/27 | $22,119.04 |
| Property | Chubb Group of Insurances | 35334260 | 9/1/26 - 9/1/27 | $74,433.00 |
| General Liability | Chubb Group of Insurances | 35334260 | 9/1/26 - 9/1/27 | $155,372.00 |
| Commercial Umbrella | Chubb Group of Insurances | 7972-78-38 | 9/1/26 - 9/1/27 | $64,025.00 |
| Executive Package (fiduciary liability, crime, kidnap ransom and extortion, workplace violence expense) | Federal Insurance Company | 8236-9960 | 9/1/26 - 9/1/27 | $14,619.00 |
| Business Travel Accident | Chubb Group of Insurances | 64031149 | 9/1/26 - 9/1/27 | $1,500.00 |
| Cyber Liability | Coalition Insurance Solutions | C-4LPY-068432-CYBER-2026 | 9/1/26 - 9/1/27 | $22,037.18 |
| Employment Practices Liability (placed through RT Specialty) | Swiss Re Corporate Solutions Capacity Insurance Corporation | PMP 1000613-00 | 9/1/26 - 9/1/27 | $24,968.83 |
| Third-Party Claims Administration | Chubb Group of Insurances | N/A | 9/1/26 - 9/1/27 | $12,000.00 |
| Workers' Compensation and Employer's Liability (all states other than Wisconsin) | Sentry Casualty Company | A0244467001 | 3/1/26 - 3/1/27 | See Section B |
| Workers' Compensation and Employer's Liability (Wisconsin) | Sentry Casualty Company | A0244467002 | 3/1/26 - 3/1/27 | See Section B |
| Total – commercial lines (excludes workers' compensation) | | | | $391,074.05 |

**<u>EXHIBIT A</u>**

***Proposed Order***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ONCORE MOTOR GROUP LLC, and | ) | Case No. 26-BK-04298 |
| REULAND ELECTRIC CO., | ) | Case No. 26-BK-04300 |
| | ) | |
| Debtors.[1] | ) | Hon. Nancy B. King |
| | ) | Chapter 11 |
| | ) | (Joint Administration Requested) |

**EXPEDITED ORDER (I) AUTHORIZING THE DEBTORS TO CONTINUE THEIR INSURANCE PROGRAM, (II) AUTHORIZING THE DEBTORS TO PAY ALL PREPETITION AND POSTPETITION OBLIGATIONS WITH RESPECT THERETO, AND (III) AUTHORIZING BANKS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Upon the expedited motion (the "Motion")[2] of OnCore Motor Group LLC and Reuland Electric Co., the debtors and debtors in possession (collectively, the "Debtors"), for entry of an order authorizing the Debtors to continue their Insurance Program, to pay prepetition and postpetition obligations with respect thereto, and directing banks and other financial institutions to honor and process related checks and transfers; and upon consideration of the First Day Declaration; the Court having jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334; this being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; the Court finding that the relief requested is necessary to avoid immediate and irreparable harm within

[1] The Debtors in these Chapter 11 cases, along with the last four digits of Debtors' federal tax identification numbers are: OnCore Motor Group LLC (3510) and Reuland Electric Co. (2980). The corporate headquarters and mailing address for OnCore Motor Group LLC is 6323 Pettus Road, Antioch, TN 37013-4722. The corporate headquarters for Reuland Electric Co. is 1615 Yeager Ave, La Verne, CA 91750 and the mailing address is 225 North Unruh, City of Industry, CA 91744.
[2] Capitalized terms not defined in this Order shall have the meanings given to them in the Motion.

the meaning of Bankruptcy Rule 6003; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED as follows:

1. The Motion is GRANTED as set forth herein.

2. The Debtors are authorized, but not directed, to continue the Insurance Program without interruption, on the same basis and to the same extent as in effect immediately prior to the Petition Date.

3. The Debtors are authorized, but not directed, to pay prepetition obligations arising under the Insurance Program, including approximately $144,139.97 associated with the September 1, 2026 renewal and approximately $245,464.32 owed under the Workers' Compensation Program. The Debtors are authorized to negotiate and agree with any Insurer as to the timing and manner of payment of any such obligation, including payment in installments over time, without further order of this Court. Nothing in this Order constitutes a consent to, or an authorization of, any setoff, recoupment, or application by any Insurer of any collateral, security deposit, or unused loss fund balance held by it against any prepetition obligation, and the Debtors reserve all rights with respect to any such amount.

4. The Debtors are authorized, but not directed, to pay all postpetition premiums, installments, deductibles, retentions, claim payments, loss funding installments and loss fund deposits, collateral and security deposits, including any additional collateral required by an Insurer, retrospective premium adjustments, taxes, surcharges, assessments, and administrative fees arising under the Insurance Program as they come due in the ordinary course of business, including any amount determined to be owing following a premium audit or a retrospective premium adjustment conducted after the Petition Date.

5. Without further order of this Court, the Debtors are authorized, but not directed, to renew, revise, extend, supplement, modify, replace, or terminate any Policy, and to enter into new insurance arrangements, including tail or run-off coverage, in the ordinary course of business and in the Debtors' business judgment.

6. Without further order of this Court, the Debtors are authorized, but not directed, to continue to retain the Broker, to amend, supplement, or enter into new broker retention arrangements, and to pay Broker Fees, whether incurred before or after the Petition Date, in the ordinary course of business.

7. All banks and other financial institutions are authorized and directed to receive, process, honor, and pay all checks presented for payment and all electronic payment requests relating to the relief granted herein, whether presented or submitted before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts, and are authorized to rely on the Debtors' designation of any particular check or electronic payment request as authorized by this Order.

8. Nothing in this Order constitutes (a) an admission as to the validity, priority, or amount of any claim; (b) a waiver of any right, claim, defense, counterclaim, or cause of action of the Debtors or their estates; (c) the assumption, adoption, or rejection of any Policy or related agreement under section 365 of the Bankruptcy Code; or (d) a requirement to pay any particular claim. The Debtors reserve all rights to contest the validity or amount of any obligation arising under the Insurance Program.

9. All payments authorized by this Order are subject to any order of this Court authorizing the use of cash collateral or postpetition financing then in effect, and to the budget approved under any such order, provided that nothing in this Order limits the Debtors' authority

to seek an amendment to any such budget, or such further order of this Court as may be necessary, to permit payment of any obligation authorized by this Order.

10. The requirements of Bankruptcy Rule 6003(b) are satisfied. To the extent the fourteen-day stay under Bankruptcy Rule 6004(h) applies, it is waived. The requirements of Bankruptcy Rule 6004(a) are waived.

11. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

12. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13. The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

IT IS SO ORDERED.

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

APPROVED FOR ENTRY:

*/s/ Robert J. Gonzales*
Robert J. Gonzales (TN BPR#016705)
Hannah L. Berny (TN BPR# 039269)
**EMERGELAW, PLC**
4235 Hillsboro Pike, Suite 300
Nashville, Tennessee 37215
(615) 815-1535
robert@emerge.law
hannah@emerge.law

*Proposed Counsel for Debtors and Debtors in Possession*