IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ONCORE MOTOR GROUP LLC, and | ) | Case No. 26-BK-04298 |
| REULAND ELECTRIC CO., | ) | Case No. 26-BK-04300 |
| | ) | |
| Debtors.[1] | ) | Hon. Nancy B. King |
| | ) | Chapter 11 |
| | ) | (Joint Administration Requested) |

**EXPEDITED MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO HONOR PREPETITION OBLIGATIONS TO CUSTOMERS AND TO CONTINUE CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS**

Reuland Electric Co. ("Reuland" or the "Company") respectfully requests entry of an order on an expedited basis substantially in the form attached hereto as Exhibit A (the "Order"), pursuant to sections 105(a), 363(b), 363(c), 1107(a), and 1108 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing the Company to honor prepetition obligations to its customers and to continue its customer programs and practices in the ordinary course of business, and (ii) authorizing financial institutions to honor and process all checks and electronic transfers related thereto. In support of this Motion, the Company relies upon, and incorporates by reference, the *Declaration of Grant R. Bibby in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed contemporaneously herewith, and further states as follows:

[1] The Debtors in these Chapter 11 cases, along with the last four digits of Debtors' federal tax identification numbers are: OnCore Motor Group LLC (3510) and Reuland Electric Co. (2980). The corporate headquarters and mailing address for OnCore Motor Group LLC is 6323 Pettus Road, Antioch, TN 37013-4722. The corporate headquarters for Reuland Electric Co. is 1615 Yeager Ave, La Verne, CA 91750 and the mailing address is 225 North Unruh, City of Industry, CA 91744.

## SUMMARY OF EXPEDITED RELIEF REQUESTED

1. **Expedited Relief Requested.** The Company requests entry of an Order authorizing it to honor every obligation it owes to its customers and to continue serving them exactly as it did before the Petition Date. Every order in production will be built. Every deposit and progress payment a customer has paid will be credited against that customer's order. Every warranty will be honored. Refunds, credits, returns, and allowances will continue to be issued in the ordinary course, subject to an aggregate cap on prepetition amounts. Nothing about these Chapter 11 Cases changes what a Reuland customer receives.

2. **Basis for Urgency.** Reuland builds custom motors to order for customers who in most cases have no alternative supplier. Its customers have already received letters from Austin Financial Services, Inc. ("AFS"), one of the Company's secured lenders, directing them to redirect their payments, and some have withheld payment as a result. If those same customers now have reason to doubt that the motors they have ordered and paid deposits on will be built and delivered, the Company will lose not only those orders but relationships built over decades, and with them the backlog and the receivables that constitute the principal value of this estate. The relief requested is necessary to avoid immediate and irreparable harm, and it is necessary now, before uncertainty hardens into cancelled orders.

3. **Notice.** This Motion has been served on (i) all parties consenting to electronic service via the Court's CM/ECF system; (ii) the Office of the United States Trustee; and, via first class mail and via email as available, on (iii) all secured creditors of each Debtor and each party asserting an interest in cash collateral; and (iv) the 20 largest unsecured creditors of each Debtor. Debtors' proposed counsel informed the Office of the United States Trustee prior to the filing of the Chapter 11 Cases that first day motions would be filed.

4. **Suggested Hearing Date.** The Company respectfully requests a hearing date of September 8, 2026, but no later than September 9, 2026.

5. **Supporting Argument.** The Company supports this Motion as set forth below.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 363(c), 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003.

## BACKGROUND

8. On September 3, 2026 (the "Petition Date"), the Company, along with its affiliate, OnCore Motor Group LLC (collectively, the "Debtors") filed with the Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").

9. The Debtors are authorized to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in the Chapter 11 Cases.

10. Contemporaneously with the filing of the petitions, the Debtors have filed a notice of election designating these Chapter 11 Cases as complex cases under Local Bankruptcy Rule 2081-2(b).

11. Reuland is an 89-year-old manufacturer of custom electric motors. It operates an aluminum casting foundry in City of Industry, California, a CNC machining operation in Brea, California, a motor winding, assembly, and testing facility in La Verne, California, and a

manufacturing and testing facility for larger motors in Howell, Michigan, together with an engineering office in Ohio. It employs approximately 194 people and serves more than 1,000 repeat customers.

12. Additional factual background regarding the Debtors, including their business operations, capital structure, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration, which is incorporated herein by reference.

## THE COMPANY'S CUSTOMERS

13. Reuland has designed and manufactured custom electric motors since 1937. It does not sell a catalog product. Each motor is engineered to the performance characteristics a particular application requires, at ratings up to 1,000 horsepower and speeds in excess of 50,000 RPM, and manufactured across an aluminum casting foundry, a machine shop with more than fifteen CNC machining centers, a hand winding and assembly operation, and a facility for larger motors in Michigan. At any given time the Company has between 500 and 700 unique custom orders in production simultaneously.

14. The Company has more than 1,000 repeat customers (collectively, the "Customers"). Many of those relationships have continued without interruption for more than thirty years. The Customers include the United States Navy and its suppliers, aerospace and defense manufacturers, operators of moving bridges and dams and flood control systems, nuclear facilities, elevator and escalator manufacturers, and heavy industry. Reuland has supplied the motors for the substantial majority of moving bridges in the United States for more than sixty years.

15. These relationships are the principal asset of this estate. They are also, in the ordinary course, relationships of dependence. A Customer that specified a Reuland motor for a

bridge drive twenty years ago cannot obtain a replacement anywhere else. A defense prime that qualified a Reuland motor to a military specification cannot substitute another manufacturer without requalification. The Company understands what that means. Its Customers rely on Reuland, and Reuland intends that they be able to continue to do so without interruption.

16. As of the Petition Date the Company holds a backlog of approximately $14.0 million in firm Customer orders. Those orders are in production now.

## THE CUSTOMER PROGRAMS

17. In the ordinary course of business the Company maintains programs and practices for the benefit of its Customers (collectively, the "Customer Programs"). They consist of the following.

### A. Deposits and Progress Payments

18. Depending on the size of an order, the Company receives an initial payment and progress payments from a Customer in advance of shipment. These amounts are earned on receipt and are not refundable if the Customer cancels. They are received as consideration for the Company's performance and are used, as they are received, to purchase the raw material and fund the labor required to build that Customer's order. The Company applies them as credits against the applicable order when it invoices.

19. The Company's books reflect a cash-in-advance balance of approximately $3,187,644.11 across approximately 85 Customer orders as of the Petition Date. Eleven Customers account for approximately $2,063,385.88 of that balance. That balance is a deferred revenue account reflecting performance not yet recognized. It does not represent funds held by the Company, and no Customer holds a right to a refund of any portion of it.

20. The Company seeks authority to apply prepetition deposits and progress payments as credits against the applicable orders, to complete and ship those orders, and to continue soliciting and receiving deposits and progress payments after the Petition Date on its existing terms.

**B. Refunds, Credits, Returns, and Allowances**

21. The Company issues refunds, credits, returns, and allowances to Customers in the ordinary course. Over the twelve months preceding the Petition Date it issued approximately $256,721.00 across 268 separate transactions, an average of less than $1,000 per transaction. The substantial majority were credits for shipping charges that had been billed incorrectly. Warranty claims are infrequent and have historically been minor. These amounts are unrelated to the deposits and progress payments described above.

22. Refunds, credits, returns, and allowances are the only element of the Customer Programs that involves cash leaving the estate. The Company accordingly proposes an aggregate cap. It requests authority to issue refunds, credits, returns, and allowances on account of prepetition obligations in an aggregate amount not to exceed $256,721.00, which corresponds to the total issued over the twelve months preceding the Petition Date. Amounts arising from postpetition transactions are issued in the ordinary course and are not subject to the cap.

**C. Warranty and Service Obligations**

23. The Company stands behind the motors it builds. It honors warranty claims, performs repair and rework, and provides applications engineering support to Customers operating equipment the Company supplied, in some cases decades ago. The Company seeks authority to continue honoring those obligations without regard to whether the underlying motor was sold before or after the Petition Date.

**D. Communications with Customers**

24. The Company seeks authority to communicate with its Customers regarding these Chapter 11 Cases, the continuation of the Customer Programs, and the status of their orders. That authority is important here. Prior to the Petition Date, AFS issued notices to the Company's account debtors directing them to remit payment to AFS rather than to the Company, with the result that a number of Customers withheld payment altogether out of a reasonable concern about paying the wrong party. The Debtors have separately requested, in the Cash Collateral Motion filed contemporaneously herewith, an order authorizing and directing account debtors to remit payment to the Company. Together, that relief and the relief requested here permit the Company to tell its Customers, with the authority of this Court behind it, both that their orders will be built and where to send their payments.

**RELIEF REQUESTED**

25. By this Motion, the Company requests entry of an order:

(a) authorizing the Company to honor and perform its obligations under the Customer Programs, whether arising before or after the Petition Date;

(b) authorizing the Company to apply prepetition deposits, initial payments, and progress payments as credits against the applicable Customer orders, and to complete and ship against those orders;

(c) authorizing the Company to solicit, receive, and apply deposits, initial payments, and progress payments after the Petition Date on the Company's existing terms;

(d) authorizing the Company to issue refunds, credits, returns, and allowances on account of prepetition obligations in an aggregate amount not to exceed $256,721.00, and to issue

refunds, credits, returns, and allowances arising from postpetition transactions in the ordinary course without limitation;

(e) authorizing the Company to honor warranty, repair, rework, and service obligations without regard to when the underlying motor was sold;

(f) authorizing the Company to continue, renew, replace, implement, modify, or terminate any Customer Program in the ordinary course of business, in its business judgment, without further application to this Court;

(g) authorizing the Company to communicate with its Customers regarding these Chapter 11 Cases, the Customer Programs, and the status of their orders; and

(h) authorizing and directing financial institutions to receive, process, honor, and pay all checks and electronic transfers related to the foregoing.

## BASIS FOR RELIEF

### A. Most of the Relief Requested Is Ordinary Course Operation of the Business

26. Sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue operating its business. Section 363(c)(1) permits a debtor in possession to use property of the estate in the ordinary course of business without notice or a hearing. *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) (the framework of section 363 is designed to allow a debtor in possession "flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight…").

27. Most of what the Company seeks here is not the payment of a prepetition claim at all. Honoring a Customer deposit means building the motor the Customer ordered and crediting the deposit against the invoice when the motor ships. No cash leaves the estate. What occurs is performance, in the ordinary course, of exactly the business this Court has authorized the Company

to continue operating. The Company seeks an order confirming that authority out of an abundance of caution and, more importantly, so that its Customers have the certainty they need to continue placing and funding orders.

**B. Section 363(b) Authorizes the Balance of the Relief**

28. To the extent any element of the Customer Programs falls outside the ordinary course, section 363(b)(1) permits the Company, after notice and a hearing, to use property of the estate. A debtor need only articulate a business justification other than the mere appeasement of major creditors. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

29. The business justification is the estate itself. The Company's receivables have value because motors ship. Its inventory has value because it becomes motors that ship. Its $14 million backlog has value because Customers expect delivery. Every one of those assets depends on Customers continuing to believe that an order placed with Reuland will be filled. The cost of the relief requested is capped at $256,721.00. Denying it puts a $14 million backlog at risk.

**C. Section 105(a) and the Doctrine of Necessity Support the Relief**

30. Section 105(a) codifies this Court's equitable power to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code, and courts routinely rely on it to authorize pre-plan payment of prepetition obligations essential to a debtor's continued operation. *See In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999); *In re Fin. News Network Inc.*, 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

31. Courts in this District and elsewhere have granted relief of the kind requested here where customer loyalty is critical to a successful reorganization. *See, e.g., In re Regal Cinemas, Inc.*, Case No. 01-11305 (Bankr. M.D. Tenn. Oct. 12, 2001).

32. The necessity here has a particular character worth stating plainly. In most cases a customer programs motion protects goodwill. In this case it protects supply. A Customer whose bridge drive fails, whose Navy vessel is in a yard period, or whose production line is down does not have the option of waiting to see how a bankruptcy case turns out. That Customer will begin qualifying an alternative supplier the moment it doubts Reuland can deliver, and once that process starts it does not reverse. The relief requested prevents that from beginning.

**D. Rule 6003 Is Satisfied**

33. Bankruptcy Rule 6003 permits the Court to grant relief on a motion to pay all or part of a prepetition claim within 21 days after the Petition Date to the extent necessary to avoid immediate and irreparable harm. Fed. R. Bankr. P. 6003(b).

34. That standard is met. Customers have already received AFS's notices and some have withheld payment. Orders are shipping this week and next. Every day the Company operates without the ability to tell its Customers with certainty that their orders will be honored is a day in which some Customer decides to look elsewhere. The harm is immediate, it is occurring now, and it cannot be undone by an order entered three weeks from now.

## RESERVATION OF RIGHTS

35. Nothing in this Motion or in any order entered on it shall constitute (a) an admission as to the validity, priority, or amount of any claim against the Company; (b) a waiver of any right, claim, defense, counterclaim, right of setoff, or right of recoupment of the Company or its estate; (c) the assumption, adoption, or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code; or (d) a requirement to pay or honor any particular obligation. The Company reserves the right to contest the validity or amount of any claim relating to any Customer Program.

36. The Company further reserves all rights with respect to the characterization and treatment of deposits, initial payments, and progress payments received after the Petition Date, including the right to assert that such amounts are not subject to any prepetition lien pursuant to section 552(a) of the Bankruptcy Code. No party's rights with respect to that issue are determined by the Order.

## NOTICE

37. Notice has been given as indicated in paragraph 3, above. The Company submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, for the reasons set forth herein, the Company respectfully requests that the Court grant this Motion, enter the proposed Order submitted herewith, and grant the Company such other and further relief to which it may be entitled.

Dated: September 3, 2026.

Respectfully submitted,

*/s/ Robert J. Gonzales*

Robert J. Gonzales (TN BPR#016705)
Hannah L. Berny (TN BPR# 039269)
**EMERGELAW, PLC**
4235 Hillsboro Pike, Suite 300
Nashville, Tennessee 37215
(615) 815-1535
robert@emerge.law
hannah@emerge.law

*Proposed Counsel for Debtors and Debtors in Possession*

## EXHIBIT A

***Proposed Order***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ONCORE MOTOR GROUP LLC, and | ) | Case No. 26-BK-04298 |
| REULAND ELECTRIC CO., | ) | Case No. 26-BK-04300 |
| | ) | |
| Debtors.[1] | ) | Hon. Nancy B. King |
| | ) | Chapter 11 |
| | ) | (Joint Administration Requested) |

**EXPEDITED ORDER AUTHORIZING THE DEBTOR TO HONOR PREPETITION OBLIGATIONS TO CUSTOMERS AND TO CONTINUE CUSTOMER PROGRAMS IN THE ORDINARY COURSE OF BUSINESS**

Upon the expedited motion (the "Motion")[2] of Reuland Electric Co. (the "Debtor" or the "Company") for entry of an order authorizing the Company to honor prepetition obligations to its Customers and to continue the Customer Programs in the ordinary course of business; and upon consideration of the First Day Declaration; the Court having jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334; this being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; the Court finding that the relief requested is necessary to avoid immediate and irreparable harm within the meaning of Bankruptcy Rule 6003; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED as follows:

1. The Motion is GRANTED as set forth herein.

[1] The Debtors in these Chapter 11 cases, along with the last four digits of Debtors' federal tax identification numbers are: OnCore Motor Group LLC (3510) and Reuland Electric Co. (2980). The corporate headquarters and mailing address for OnCore Motor Group LLC is 6323 Pettus Road, Antioch, TN 37013-4722. The corporate headquarters for Reuland Electric Co. is 1615 Yeager Ave, La Verne, CA 91750 and the mailing address is 225 North Unruh, City of Industry, CA 91744.

[2] Capitalized terms not defined in this Order shall have the meanings given to them in the Motion.

2. The Company, in its business judgment, is authorized but not directed to honor and perform its obligations under the Customer Programs, without regard to whether such obligations arose before or after the Petition Date.

3. Without limiting the foregoing, the Company is authorized to apply prepetition Customer deposits, initial payments, and progress payments as credits against the applicable Customer orders, and to complete and ship against those orders.

4. The Company is authorized to solicit, receive, and apply Customer deposits, initial payments, and progress payments after the Petition Date on the Company's existing terms.

5. The Company's authority to issue refunds, credits, returns, and allowances on account of prepetition obligations shall not exceed $256,721.00 in the aggregate. This limitation does not apply to refunds, credits, returns, and allowances arising from postpetition transactions, which the Company is authorized to issue in the ordinary course of business.

6. The Company is authorized to honor warranty, repair, rework, and service obligations to its Customers, without regard to whether the motor or other product giving rise to the obligation was sold before or after the Petition Date.

7. The Company is authorized to communicate with its Customers regarding these Chapter 11 Cases, the Customer Programs, and the status of their orders.

8. The Company, in its business judgment, is authorized but not directed to continue, renew, replace, implement, modify, or terminate any Customer Program in the ordinary course of business, without further application to this Court.

9. All banks and financial institutions are authorized and directed to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the relief granted herein, whether presented or submitted before or after the Petition Date, and are

authorized to rely on the Company's designation of any particular check or electronic payment request as authorized by this Order.

10. Nothing in this Order constitutes (a) an admission as to the validity, priority, or amount of any claim; (b) a waiver of any right, claim, defense, counterclaim, right of setoff, or right of recoupment of the Company or its estate; (c) the assumption, adoption, or rejection of any executory contract or unexpired lease under section 365 of the Bankruptcy Code; or (d) a requirement to pay or honor any particular obligation.

11. The Company reserves all rights with respect to the characterization and treatment of deposits, initial payments, and progress payments received after the Petition Date, including the right to assert that such amounts are not subject to any prepetition lien pursuant to section 552(a) of the Bankruptcy Code. No party's rights with respect to that issue are determined by this Order.

12. The requirements of Bankruptcy Rule 6003(b) are satisfied, and the requirements of Bankruptcy Rule 6004(a) are waived.

13. The Company is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

14. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding Bankruptcy Rules 6004(h), 7062, or otherwise.

15. The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

IT IS SO ORDERED.

**THIS ORDER WAS SIGNED AND ENTERED ELECTRONICALLY AS INDICATED AT THE TOP OF THE FIRST PAGE**

APPROVED FOR ENTRY:

*/s/ Robert J. Gonzales*

Robert J. Gonzales (TN BPR#016705)
Hannah L. Berny (TN BPR# 039269)
**EMERGELAW, PLC**
4235 Hillsboro Pike, Suite 300
Nashville, Tennessee 37215
(615) 815-1535
robert@emerge.law
hannah@emerge.law

*Proposed Counsel for Debtors and Debtors in Possession*